# STATE OF MICHIGAN

# COURT OF APPEALS

LAUREN BIENENSTOCK & ASSOCIATES,
INC, LAUREN BIENENSTOCK, and SAMUEL
BIENENSTOCK,

        Plaintiffs-Appellants,

v

SUSAN LOWRY, CAROLYN GRITTINI,
JACQUELYN FLECK, BARBARA ESSIAN,
PAULA RASKIN, ROBERT GRITTINI, MARY
JO POWER, PAMELA GOLETZ, a/k/a PAMELA
LANEY, TAMMY NANNINI, CHRISTINE
GONZALEZ, a/k/a CHRISTINE
DIFRANCESCO, MAUREEN COLLIER, SARA
MANN, SHERRIE MANIER, DEBORAH
CULVER, MELISSA RIELI, VINCENT
QUAGLIA, MARLANA WILLICK, KATHLEEN
REISING, DIANNE SARKISIAN, AMY LENGA,
MEIGHAN LINEBARUGH, BONNIE MURPHY,
MARIE PUCHEL, PAMELA SMITH, LORETTA
STUMP, LISA LAMPRIDES, a/k/a LISA
GRAMBO, JOANNE KIPPERT, a/k/a JOANNE
BUGG, APRIL KURTZ, LAURA KERR, CINDY
BATTISTON, PATTI PILARSKI, MARY REED,
MONICA STORM, and PAMELA
WORTHINGTON, a/k/a PAMELA JACKSON,

        Defendants-Appellees.

FOR PUBLICATION
March 3, 2016
9:00 a.m.

No. 323986
Oakland Circuit Court
LC No. 2013-137660-CZ

Before: STEPHENS, P.J., and CAVANAGH and MURRAY, JJ.

MURRAY, J.

In this action for declaratory and injunctive relief, plaintiffs Lauren Bienenstock & Associates, Inc. (LBA), Lauren Bienenstock, and Samuel Bienenstock appeal as of right the order of the Oakland Circuit Court granting in part and denying in part their motion for summary disposition. The question presented is whether a trial court or arbitrator has the authority under the Federal Arbitration Act (FAA), 9 USC § 1 et seq., to determine whether multiple arbitration cases should be consolidated when the arbitration agreement is silent on that issue. We hold that

-1-

the arbitrator is the one to decide that issue, and so we affirm the trial court's order denying plaintiffs' motion for summary disposition on that issue.

## I. FACTS AND PROCEDURAL HISTORY

The factual backdrop to this proceeding arose from a dispute about compensation. All of the defendants worked as independent contractors for LBA at some point in the past. All but two of the defendants, Monica Storm and Pamela Worthington a/k/a Pamela Jackson ("Jackson"), signed independent contractor agreements (ICA) with LBA for performing their work as licensed court reporters. Each of the ICAs signed by the 22 defendants contained the following clause:

> Any dispute relating to this Agreement, or breach thereof, shall be settled pursuant to the rules and regulations of the American Arbitration Association ("AAA"). Either Party requesting arbitration under this Agreement shall make a demand on the other party by registered or certified mail, with a copy to the AAA's Southfield, Michigan office, which shall be the location of any arbitration hearing. The arbitration shall then take place as noticed by the AAA, and the outcome thereof shall be binding regardless of whether one of the parties fails or refuses to participate.

Initially defendants filed a lawsuit in Macomb circuit court against plaintiffs seeking what they believed was overdue compensation. However, as a result of the arbitration clause quoted above, plaintiffs moved for—and were granted—summary disposition with regard to the 22 defendants in this case—all of whom had signed an ICA with an arbitration agreement—and were denied summary disposition with regard to the four other court reporters for whom no ICA could be found.[1] These 22 defendants appealed that decision to this Court, arguing that because the ICAs were not valid or enforceable, they were not required to resolve their disputes in arbitration. We concluded otherwise. *Lowry v Lauren Bienenstock & Assoc, Inc*, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2014 (Docket No. 317516).

In any event, while those two cases were pending, defendants (including the 22 with a pending appeal) filed a demand for arbitration against plaintiffs with the American Arbitration Association (AAA). Because their ICAs provided that arbitration would be handled pursuant to AAA rules and regulations, and AAA rules permitted class arbitration under certain circumstances, defendants filed their arbitration as a class arbitration, defining the class as "[a]ll court reporters who currently provide, or formerly provided, court reporting services as independent contractors for [LBA] pursuant to a written [ICA] that included an arbitration provision." Defendants asserted that the class numbered in the hundreds, they all shared a common transaction arising out of the same facts and applicable law, joinder of all the claimants would be impracticable, and class arbitration was the most convenient and cost-effective way of disposing of the dispute.

---

[1] The four remaining court reporters, however, voluntarily dismissed their claims without prejudice because they did not live or do business in Macomb County. They then refiled in Oakland Circuit Court, with one additional court reporter, reasserting the same allegations.

Plaintiffs responded by filing the instant suit in Oakland circuit court, requesting declaratory and injunctive relief regarding defendants' arbitration before the AAA. Specifically, plaintiffs requested that the trial court declare that defendants were not permitted to bring a class arbitration and that it enjoin their current class arbitration from going forward. Plaintiffs asserted that federal case law under the FAA held that it was a court's duty to decide the "gateway issue" of whether class arbitration is permitted. That question was not, as asserted by defendants, for the arbitrator to decide. Relatedly, plaintiffs also asked for a declaration that defendants were only permitted to proceed with individual arbitration regarding their own individual claims, and that there should not be any consolidation. Soon after filing suit, plaintiffs moved for summary disposition of all their claims pursuant to MCR 2.116(C)(6) and (C)(10), asking the trial court to (1) find that it had the authority to determine whether class arbitration or consolidation were permitted and (2) decide those issues in plaintiffs' favor.

Defendants, of course, disagreed with plaintiffs' arguments. Instead, defendants countered, the arbitrator should determine whether class arbitration (and consolidation) is permitted, principally because the arbitration agreement specifically stated that it would be handled under AAA rules and regulations, and those rules permit class arbitration in certain circumstances, and gives the arbitrator the authority to decide consolidation issues. Noting that the cases relied upon by plaintiffs hold only that a trial court should decide whether class arbitration is permitted when the contract does not require otherwise, defendants pointed to the contract's specific reference to AAA rules, which state that the arbitrator is to make the decision, and argued that provision required the trial court to defer to the arbitrator.

At the motion hearing, the trial court ruled from the bench. First, the trial court held that, pursuant to persuasive case law, in the face of contractual silence whether class arbitration is permitted is a gateway issue for the trial court to decide. The trial court also held that whether consolidation was permitted was a subsidiary question for the arbitrator to decide and denied plaintiffs' motion for summary disposition on that question.

The trial court subsequently denied plaintiffs' motion for reconsideration. In doing so, the trial court ruled that because the question of consolidation of claims that are undoubtedly arbitrable falls into the subsidiary question category, without specific instruction from the contract, it is an issue for the arbitrator to decide. Although the trial court noted the potential for disparate treatment between class arbitration and consolidation decisions and who can decide them, the court reasoned that a decision from the United States Court of Appeals for the Sixth Circuit, *Reed Elsevier, Inc v Crockett*, 734 F3d 594, 597 (CA 6, 2013), supported the principle that courts should decide the gateway issue of class arbitration, but that no decision supported the theory that consolidation was also a gateway issue, and so it concluded that it was a subsidiary issue.

This appeal followed.

## II. ANALYSIS

"This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law." *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In

evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*.

## A. GENERAL PRINCIPLES

As noted at the outset of this opinion, the only issue to be decided is who—a trial court judge or an arbitrator—is the appropriate one to decide whether multiple arbitrations should be consolidated when the contract does not speak to the issue. The issue is governed by federal law, as there is no dispute that the FAA applies to these contracts. See *Amtower v William C Roney & Co (On Remand)*, 232 Mich App 226, 232; 590 NW2d 580 (1998) (this Court must apply the FAA because "[s]tate courts are bound, under the Supremacy Clause, US Const, art VI, cl 2, to enforce the FAA's substantive provisions" for contracts arising out of interstate commerce). With regard to issues involving federal law, this Court is bound by decisions of the United States Supreme Court, *Abela v General Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004), but is not bound by decisions from any lower federal courts, because "[a]lthough lower federal court decisions may be persuasive, they are not binding on state courts." *Id*. at 606-607.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc v Kaplan*, 514 US 938, 943; 115 S Ct 1920; 131 L Ed 2d 985 (1995). In other words, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v Dean Witter Reynolds, Inc*, 537 US 79, 83; 123 S Ct 588; 154 L Ed 2d 491 (2002), quoting *United Steelworkers of America v Warrior & Gulf Navigation Co*, 363 US 574, 582; 80 S Ct 1347; 4 L Ed 2d 1409 (1960). "In this endeavor, as with any other contract, the parties' intentions control." *Stolt-Nielsen SA v AnimalFeeds Int'l Corp*, 559 US 662, 682; 130 S Ct 1758; 176 L Ed 2d 605 (2010) (internal citations and quotations omitted).

"Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *BG Group PLC v Republic of Argentina*, 572 US ___, ___; 134 S Ct 1198, 1206; 188 L Ed 2d 220 (2014). However, "[i]f the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *Id*. at __; 134 S Ct at 1206. One such presumption is that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc v Communication Workers of America*, 475 US 643, 649; 106 S Ct 1415; 89 L Ed 2d 648 (1986). In *Howsam*, 537 US at 83, the Supreme Court referred to the above exception as a "gateway question," or a "question of arbitrability" and held that it had a limited scope. Examples of gateway or arbitrability issues "include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.' " *BG Group*, 572 US __; 134 S Ct at 1206, quoting *Howsam*, 537 US at 84.

On the other hand, there are "procedural questions which grow out of the dispute and bear on its final disposition." *Howsam*, 537 US at 84, quoting *John Wiley & Sons, Inc v Livingston*, 376 US 543, 557; 84 S Ct 909; 11 L Ed 2d 898 (1964). We presume (again, absent

any relevant contract language) that procedural questions, sometimes referred to as subsidiary questions, are to be decided by the arbitrator, not the courts. *Howsam*, 537 US at 84. In other words, "the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Group*, 572 US __; 134 S Ct at 1207. Examples of procedural questions for the arbitrator to decide include "whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration," and "allegations of waiver, delay, or a like defense to arbitrability." *Howsam*, 537 US at 84 (internal citations and quotations omitted.). When the issue presented is close and "there is doubt" about whether an issue is a gateway question for the courts or a procedural one for arbitration, "we should resolve that doubt in favor of arbitration." *Green Tree Financial Corp v Bazzle*, 539 US 444, 452; 123 S Ct 2402; 156 L Ed 2d 414 (2003) (plurality opinion), citing *Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc*, 473 US 614, 626; 105 S Ct 3346; 87 L Ed 2d 444 (1985).

From these doctrinal definitions there are typically two situations where a court would be empowered to decide whether consolidation is permissible. First, if the contract between the parties explicitly states that a court should decide the issue, then the parties' intent would be plain, and a court would be required to follow that intention. See *Stolt-Nielsen SA*, 559 US at 682 ("In this endeavor, as with any other contract, the parties' intentions control.") and *BG Group*, 572 US __; 134 S Ct at 1207 ("it is up to the parties to determine whether a particular matter is for arbitrators or for courts to decide."). Second, if the parties' intent is not discernable from the face of the contract, then a court must engage in presumptions regarding the parties' intent, *id*., and should only decide an issue if it is a gateway issue involving whether a contract to arbitrate exists or whether a particular type of claim falls under the arbitration agreement. *Howsam*, 537 US at 84.

## B. APPLICATION OF GENERAL PRINCIPLES

Turning to the facts before us, the contract does not reveal an intent regarding consolidation, as the text of the arbitration clause makes no mention of consolidation or the potential combination of various parties. Rather, the contract merely grants broad power to the arbitrator to determine all disputes arising between the parties. With no mention of consolidation in the text of the contract, we must turn to the presumptions. *BG Group*, 572 US __; 134 S Ct at 1206. In doing so it is clear that the parties are subject to an arbitration agreement, and there is no suggestion that the underlying claim for overdue compensation falls outside the terms of the agreement. Consequently, the issue of who decides whether to consolidate arbitration claims does not fall within the general purview of a gateway issue, see *id*., and *Stolt-Nielsen SA*, 559 US at 682, and is instead a procedural or subsidiary issue for the arbitrator to decide.

The United States Court of Appeals for the Seventh Circuit came to this same straight forward conclusion in *Employers Ins Co of Wausau v Century Indemnity Co*, 443 F3d 573, 577 (CA 7, 2006), where the court cogently explained:

> We find based on *Howsam* that the question of whether an arbitration agreement
> forbids consolidated arbitration is a procedural one, which the arbitrator should
> resolve. It does not involve whether Wausau and Century are bound by an
> arbitration clause or whether the arbitration clause covers the Aqua-Chem
> policies. Instead, the consolidation question concerns grievance procedures—i.e.,

whether Century can be required to participate in one arbitration covering both the Agreements, or in an arbitration with other reinsurers.

Accord, *Harry Baker Smith Architects II PLLC v Sea Breeze I LLC*, 83 So 3d 395, 399 (Miss App, 2011) (Because the parties agreed to arbitrate, and both placed the issue before the arbitrator, the issue of consolidation was for the arbitrator); *Certain Underwriters at Lloyd's London v Westchester Fire Ins Co*, 489 F3d 580, 587-588 (CA 3, 2007) (Because the parties agreed to arbitrate the particular issue, any doubt who should decide the consolidation issue was resolved in favor of the arbitrator); *Shaw's Supermarkets, Inc v United Food and Commercial Workers Union, Local 791*, 321 F3d 251, 254 (CA 1, 2003) (Concluding that because each of the grievances were arbitrable, consolidation was an issue for the arbitrator).

In addition, allowing an arbitrator to decide consolidation issues in light of a silent contract would in no way create a "risk of forcing parties to arbitrate *a matter* that they may well not have agreed to arbitrate," *Howsam*, 537 US at 83-84 (emphasis added), because the underlying claims indisputably fall under the agreed upon arbitration clause. And, in no way will the answer on consolidation "determine whether the underlying controversy will proceed to arbitration on the merits." *Id*. at 83. Regardless of the outcome of this decision, each of the grievances will proceed to arbitration, with the answer on consolidation only determining what form that arbitration will take. Under the facts presented, the issue of consolidation is a procedural one.

As we noted, our conclusion is consistent with a significant number of federal decisions, each of which have held that whether to consolidate is for the arbitrator to decide when the contract is silent on the issue. Indeed, the decisions are almost uniform in this conclusion. See, e.g., *Certain Underwriters at Lloyd's London*, 489 F3d at 587-588; *Employers Ins Co of Wausau*, 443 F3d at 577; *Shaw's Supermarkets, Inc*, 321 F3d at 254; and *Blimpie International, Inc v Blimpie of the Keys*, 371 F Supp 2d 469, 473 (SDNY, 2005). We therefore hold that, in the face of contractual silence on the issue, whether multiple arbitrations should be consolidated is a question for the arbitrator.

To their credit, plaintiffs do not seek to hide from this line of cases. Instead, they argue these cases were collectively based on an incorrect understanding of the precedential effect of *Bazzle*,[2] or that the passage of time, i.e., since *Stolt-Nielson* was released, has caused the plurality opinion's conclusion in *Bazzle* to be no longer persuasive. Proof of this, they argue, is that several federal courts of appeal have recently held that whether class arbitration can proceed *is* a gateway issue, which of course is contrary to the plurality decision in *Bazzle*. Plaintiffs are correct that *Bazzle* provided *a* foundation for many of these cases, but of equal import to these decisions—if not more important—was the majority opinion in *Howsam*. And, *Stolt-Nielson* did

---

[2] *Bazzle* was a plurality decision, and although plurality opinions generally have no precedential effect, there was a split amongst the circuits as to whether *Bazzle* contained a discernable holding amongst the different opinions. See *Employers Ins Co of Wausau*, 443 F3d at 580 (concluding that there was not one) with *Pedcor Management Co, Inc v Nations Personnel of Texas, Inc*, 343 F3d 355, 359 (CA 5, 2003) (finding that there was).

not alter how we look at this precise issue, at least not in the way plaintiffs suggest. We explain our conclusions below.

## C. *STOLT-NIELSON* DOES NOT ADDRESS THIS ISSUE

First, *Stolt-Nielson*. Determining the import of *Stolt-Nielson* requires knowing its context in relation to *Bazzle*. In *Bazzle* a plurality of the Court concluded that the issue whether a contract allowed for class arbitration was not a gateway issue, and thus it was for the arbitrator, rather than the court, to decide. See *Bazzle*, 539 US at 452. After *Bazzle* was issued in 2003, many federal courts relied in part on *Bazzle* to hold that arbitrators were to decide the procedural question whether an arbitration agreement allowed for class arbitration, see *Pedcor Management Co, Inc v Nations Personnel of Texas, Inc*, 343 F3d 355, 359-360 (CA 5, 2003) and *Johnson v Long John Silver's Restaurants, Inc*, 320 F Supp 2d 656 (MD Tenn, 2004), aff'd 414 F3d 583 (CA 6, 2005).[3]

But then came *Stolt-Nielsen*, in which a majority of justices made clear that *Bazzle* was only a plurality decision, and thus did not contain a holding from that Court regarding anything, let alone that deciding whether class wide arbitration was a gateway issue was for the court to decide. *Stolt-Nielsen SA*, 559 US at 680. The Court made this point again in *Oxford Health Plans LLC v Sutter*, __ US __, __; 133 S Ct 2064, 2068 n 2; 186 L Ed 2d 113 (2013), where a majority said that the Court "has not yet decided whether the availability of class arbitration" is a decision relegated to the court (thus a gateway issue) or the arbitrator (and thus a procedural, or subsidiary, issue).[4] See also *Reed Elsevier, Inc*, 734 F3d at 597-598 (recognizing that *Bazzle* contained no precedential rulings, and holding that based on *Stolt-Nielson*, class arbitration was a gateway issue for the court).

Plaintiffs argue that these two recent Supreme Court decisions have diminished the importance of the *Bazzle* plurality's opinion, and so in turn the cases decided before *Stolt-Nielson* that addressed consolidation as a gateway issue with *Bazzle* as their foundation are suspect, and should not be considered persuasive precedent. *Stolt-Nielson* does not, however, affect this issue in the way plaintiffs perceive. As explained below, if anything *Stolt-Nielson* implicitly disenfranchised courts from analogizing class arbitration issues to these involving consolidation.

The issue presented in *Stolt-Nielson*, a post-arbitration case, was whether "imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the" FAA. *Stolt Nielson SA*, 559 US at 666. Accordingly, as some courts have noted, "*Stolt-Nielson*

---

[3] As we noted earlier, during this same post-*Bazzle*, pre-*Stolt-Nielson* time period, courts were likewise concluding that consolidation was also for the arbitrator to decide. See *Certain Underwriters at Lloyd's London*, 489 F3d at 587-588; *Employers Ins Co of Wausau*, 443 F3d at 577; *Shaw's Supermarkets, Inc*, 321 F3d at 254; *Blimpie International, Inc*, 371 F Supp 2d at 473.

[4] As a result, who decides whether an agreement authorizes class arbitration "remains open at the Supreme Court level." *Price v NCR Corp*, 908 F Supp 2d 935, 941 (ND Ill, 2012).

concerns only *how to decide* whether an arbitration agreement authorizes class arbitration, not *who decides.*" *Lee v JP Morgan Chase & Co*, 982 F Supp 2d 1109, 1113 (CD Calif, 2013). See also *Blue Cross Blue Shield of Massachusetts v BCS Ins Co*, 671 F3d 635, 638-639 (CA 7, 2011) (The only issue decided in *Stolt-Nielson* was whether the arbitrators exceeded their authority in conducting a class arbitration, not who decides that issue in the first instance). That the *Stolt-Nielson* Court did *not* address what entity—court or arbitrator—should decide whether an arbitration agreement permitted class arbitration, was more recently made clear in *Oxford Health Systems*, __ US at __; 133 S Ct at 2068 n 2. The question we are faced with today has therefore not been decided by the United States Supreme Court, and thus *Stolt-Nielson* does not *require* rejection of those decisions rendered after *Bazzle* which held that, absent contact language addressing the issue, consolidation was for the arbitrator to decide. See *Lee*, 982 F Supp 2d at 1113 (rejecting the argument that *Stolt-Nielson* changed the legal landscape on gateway issues, since it did not involve one) and *Blue Cross Blue Shield of Massachusetts*, 671 F3d at 640 (court held that *Stolt-Nielson* did not require it to modify its prior holding in *Employers Ins Co of Wausau*, 443 F3d at 577, that whether to consolidate arbitration cases was not a gateway issue).

## D.  CLASS ARBITRATION DECISIONS

Having rejected plaintiffs' theory of the impact of *Stolt-Nielson*, we now turn to whether the more recent class arbitration gateway decisions impact the consolidation issue. Although there can be no doubt that the "confusion of whether class arbitration is a gateway or subsidiary issue began with [these] two United States Supreme Court decisions," *Shakoor v VXI Global Solutions*, 2015 Ohio 2587; 35 NE3d 539, 545 (Ohio App, 2015), no real confusion exists but that under these circumstances consolidation is a subsidiary issue. This holds true because, despite this lack of clarity at the Supreme Court level, the simple fact is that most (if not all) federal courts have held—pre and post-*Stolt-Nielson*—that consolidation is a procedural issue properly left to the arbitrator. And this is not just a numbers game, where we look to where a majority of the decisions have come down on an issue, and simply follow them. Instead, in addition to recognizing (as we already have) the limited holding of *Stolt-Nielson*, these courts also recognize (1) the significantly different and more complex considerations involved in determining whether class arbitration should proceed compared to what is considered in consolidation issues, and (2) the procedural nature of consolidation issues.

Decisions like *Reed Elsevier*, which have concluded contrary to *Bazzle* that class arbitration is a gateway issue, do not support the argument that consolidation issues are as well. Indeed, much of what is contained in *Stolt-Nielson* provides support for the conclusion that class arbitration issues involve unique and particularly complex matters and are placed in a completely different category than those involving consolidation. For example, the Court repeatedly emphasized the significant differences between a bilateral arbitration (one claimant under one contract) and class wide arbitration, classifying the differences as "fundamental." *Stolt-Nielson SA*, 559 US at 686. The California Court of Appeals, citing to *Stolt-Nielson*, explained some of these critical differences:

> For example, arbitration's putative benefits—i.e., "lower costs, greater efficiency and speed"—"are much less assured" in classwide arbitration, which, according to the court, "giv[es] reason to doubt the parties' mutual consent" to a classwide arbitration procedure. (*Stolt–Nielsen, supra*, at p 685, 130 S Ct 1758; [*AT & T Mobility LLC v*] *Concepcion*, [__US __; 131 S Ct 1740, 1750; 179 L Ed 2d 742 (2011)] ["the switch from bilateral to class arbitration sacrifices the principal

advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment"].) Further, "[c]onfidentiality becomes more difficult" in classwide arbitrations (*Concepcion, supra,* at p 1750), a complication that "potentially frustrate[s] the parties' assumptions when they agreed to arbitrate." (*Stolt–Nielsen, supra,* at p 686, 130 S Ct 1758.)[*Garden Fresh Restaurant Corp v Superior Court,* 231 Cal App 4th 678, 686; 180 Cal Rptr 3d 89 (2014).]

An equal if not greater concern has been the impact class arbitration can have on third parties, for a class arbitration award "no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Stolt-Nielson SA,* 559 US at 686. No less significant are the notice and opt out requirements and a quagmire of other complex issues that must be addressed in a class proceeding. See *Opalinski v Robert Half Int'l Inc,* 761 F3d 326, 332-335 (CA 3, 2014) and *Reed Elsevier Inc,* 734 F3d at 598, both discussing how fundamental the differences are between class arbitration and bilateral arbitration. And because of the significant issues and differences involved in class arbitration versus bilateral arbitration, the *Stolt-Nielson* Court held that an arbitrator exceeded his authority by forcing parties to proceed with class arbitration when no contractual language supported that type of proceeding. *Stolt-Nielson,* 559 US at 687.

The concerns that surface with class arbitrations do not, for the most part, exist with consolidation. For one, consolidating arbitrations does not result in an arbitrator deciding the rights of absent third parties. Instead, cases that are already subject to arbitration are merely consolidated before the same arbitrator, who can then presumably create greater efficiencies when it comes to discovery or other pre-arbitration matters. The rules typically considered in deciding whether a class action should proceed-and what must be done if it does proceed-are much more complex, time-consuming and expensive than what is typically required in deciding whether to consolidate. Compare MCR 2.505(A) with MCR 3.501. In other words, the significant concerns and issues raised by a request for class arbitration do not arise when individual cases are consolidated. This point was articulated quite well by the United States Court of Appeals for the Seventh Circuit, where Chief Judge Easterbrook wrote for the court in *Blue Cross Blue Shield of Massachusetts,* 671 F3d at 640:

> Class actions always have been treated as special. One self-selected plaintiff represents others, who are entitled to protection from the representative's misconduct or incompetence. Often this requires individual notice to class members, a procedure that may be more complex and costly than the adjudication itself. See *Eisen v Carlisle & Jacquelin,* 417 US 156; 94 S Ct 2140; 40 L Ed 2d 732 (1974). As a practical matter the representative's small stake means that lawyers are in charge, which creates a further need for the adjudicator to protect the class. Finally, class actions can turn a small claim into a whopping one. Unsurprisingly, Fed.R.Civ.P. 23 imposes stringent requirements on class certification. Consolidation of suits that are going to proceed anyway poses none of these potential problems. That's why Fed.R.Civ.P. 42(a) leaves to a district

judge's discretion—and without any of Rule 23's procedures and safeguards—the decision whether to consolidate multiple suits. Just as consolidation under Rule 42(a) does not change the fundamental nature of litigation, so consolidation of the plans' claims would not change the fundamental nature of arbitration.[5]

Hence, decisions like *Reed Elsevier Inc*, i.e., post-*Stolt-Nielson* decisions holding that class arbitration is a gateway issue, address a different animal than we do when addressing a consolidation issue. And for that reason they provide no assistance to plaintiffs' position.

## E. CONCLUSION

Finally, critical to our decision is remembering that gateway issues involve "questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular controversy.'" *BG Group*, 572 US __; 134 S Ct at 1206, quoting *Howsam*, 537 US at 84. As we emphasized earlier, gateway arbitrability questions fall into a very narrow range of issues, focusing on whether the parties agreed to arbitrate at all, or agreed to arbitrate a particular *type* of claim. *Garden Fresh Restaurant Corp*, 231 Cal App 4th at 684, citing in part *Howsam*, 537 US at 83-84. Though these may not be the only circumstances in which gateway issues may be found—as reflected by those cases concluding that a decision on class arbitration is a gateway issue—this fundamental underpinning to gateway issues makes it clear that the fact intensive decision of consolidation is procedural.

For all these reasons, we conclude that the virtual unanimity amongst the federal courts prior to (and after) *Stolt-Nielson*, holding that consolidation decisions are subsidiary ones left to the arbitrator to decide under the contract (when the contract does not provide for a different venue or otherwise address consolidation), remain persuasive authority, and nothing in the case law since then requires a different conclusion.[6] We therefore agree with and follow the rationale of those cases and hold that, absent any contractual language addressing the issue, whether multiple arbitrations should be consolidated is a procedural or subsidiary issue for the arbitrator to decide.

---

[5] MCR 2.505(A) contains the same criteria for consolidation of circuit court actions that are contained in FRCP 42.

[6] We point out that in *Bay Co Bldg Auth v Spence Bros*, 140 Mich App 182, 188; 362 NW2d 739 (1984), we held that in the absence of contractual language addressing consolidation, it was for the arbitrator to decide the issue because it was a procedural, rather than a gateway, issue. But we do not rely on that case, nor do we need to address Michigan's newly enacted Uniform Arbitration Act, MCL 691.1681 *et seq*, because this issue is controlled by federal law. *In re Salomon Inc Shareholders' Derivative Litigation*, 68 F3d 554, 559 (CA 2, 1995).

Affirmed.  Defendants may tax costs, having prevailed in full.  MCR 7.219(A).


/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh