*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMANTHA LICHON,

        Plaintiff-Appellant,

v

MICHAEL MORSE, and MICHAEL J. MORSE, PC,

        Defendant-Appellees.

FOR PUBLICATION
March 14, 2019
9:15 a.m.

No. 339972
Oakland Circuit Court
LC No. 17-158919-CZ

---

JORDAN SMITS,

        Plaintiff-Appellant,

v

MICHAEL MORSE,

        Defendant-Appellee.

No. 340513
Wayne Circuit Court
LC No. 17-011128-CZ

---

JORDAN SMITS,

        Plaintiff-Appellant,

v

MICHAEL MORSE, and MICHAEL J. MORSE, PC,

        Defendant-Appellees.

No. 341082
Wayne Circuit Court
LC No. 17-008068-CZ

---

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

-1-

JANSEN, P.J.

In Docket No. 339972, referred to by the parties as *The Lichon Case*, plaintiff Samantha Lichon (Lichon) appeals as of right the June 22, 2017, order granting summary disposition in favor of defendants, Michael Morse (Morse) and Michael J. Morse, PC (the Morse firm), and compelling arbitration. We reverse, vacate the Oakland Circuit Court's June 22, 2017, order, and remand for proceedings consistent with this opinion.

In Docket No. 341082, referred to by the parties as *Smits I*, plaintiff, Jordan Smits (Smits), appeals as of right the July 18, 2017, written order and opinion granting summary disposition in favor of defendants and compelling arbitration. We reverse, vacate the Wayne Circuit Court's July 18, 2017, written opinion and order, and remand for proceedings consistent with this opinion.

In Docket No. 340513, referred to by the parties as *Smits II*, Smits appeals as of right the October 2, 2017 order granting summary disposition in favor of Morse. We affirm.

Docket Nos. 339972, 341082, and 340513 were consolidated by this Court in an order dated December 27, 2017. *Lichon v Morse*, unpublished order of the Court of Appeals, entered December 27, 2017 (Docket Nos. 339972; 340513; 341082). The parties have filed consolidated briefs on appeal, and this Court will address the merits of the cases together where possible.

## I. RELEVANT FACTUAL BACKGROUND

### A. THE LICHON CASE

*The Lichon Case* arises out of Morse's alleged sexual assault and harassment of Lichon while Lichon was working for the Morse firm as a receptionist. Plaintiff alleges Morse frequently sexually harassed Lichon through unwelcome comments or conduct of an offensive or sexual nature. On multiple occasions, Morse sexually assaulted Lichon during work hours by physically touching her in a sexual manner without her permission. The unwanted touching included groping Lichon's breasts and groin area, while audibly commenting things like, "you make me so hard," and "I want to take you into my office." Lichon claimed that she "complained to her superiors," i.e., the Human Resources Department at the Morse firm, but no action was taken and the sexual assaults and sexual harassment continued. On February 17, 2017, Lichon was terminated from the Morse firm due to poor professional performance.

On May 24, 2017, Lichon filed a four-count complaint against the Morse firm and Morse individually. Lichon alleged workplace sexual harassment in violation of the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*, against the Morse firm and Morse, sexual assault and battery against Morse individually, negligent and intentional infliction of emotional distress against the Morse firm and Morse, and negligence, gross negligence, and wanton and willful misconduct against the Morse firm and Morse. On May 26, 2017, Lichon filed a first amended complaint, adding a fifth count of civil conspiracy against the Morse firm and Morse, alleging that defendants had sought to intimidate, pressure, or attempt to persuade or coerce her not to file a lawsuit.

In lieu of an answer, defendants filed a motion to dismiss and compel arbitration, arguing that as a condition of her employment, Lichon had signed a Mandatory Dispute Resolution Procedure Agreement (MDRPA), which requires Lichon to arbitrate her claims. Because Lichon's claims arise out of her "employment with and termination from" the Morse firm, pursuant to MCR 2.116(C)(7) and MCR 3.602, defendants requested that the trial court "compel [Lichon] to prosecute her claims exclusively by way of compulsory and binding arbitration and to dismiss this action."

The MDRPA, signed by Lichon on September 29, 2015, provides, in pertinent part:

This Mandatory Dispute Resolution Procedure shall apply to all concerns you have over the application or interpretation of the Firm's Policies and Procedures relative to your employment, including, but not limited to, any disagreements regarding discipline, termination, discrimination or violation of other state or federal employment or labor laws. This includes any claim over the denial of hire. This Procedure includes any claim against another employee of the Firm for violation of the Firm's Policies, discriminatory conduct or violation of other state or federal employment or labor laws. Similarly, should the Firm have any claims against you arising out of the employment relationship, the Firm also agrees to submit them to final and binding arbitration pursuant to this Procedure.

* * *

The only exceptions to the scope of this Mandatory Dispute Resolution Procedure shall be for questions that may arise under the Firm's insurance or benefit programs (such as retirement, medical insurance, group life insurance, short-term or long-term disability or other similar programs). These programs are administered separately and may contain their own separate appeal procedures. In addition, this Procedure does not apply to claims for unemployment compensation, workers' compensation or claims protected by the National Labor Relations Act. While this Procedure does not prohibit the right of an employee to file a charge with the Equal Employment Opportunity Commission ("EEOC") or a state civil rights agency, it would apply to any claims for damages you might claim under federal or state civil rights laws. In addition, either Party shall have the right to seek equitable relief in a court of law pending the outcome of the arbitration proceeding.

The dispute resolution procedure is outlined as follows: first, an employee must file a "request for review of your concern stating your disagreement or concern and the action you request the Firm to take," to a direct supervisor within one year. The supervisor will date the request and provide the employee with a copy. The supervisor will then "generally schedule a meeting with [the employee] to hear [the employee's] concerns and will provide [the employee] with a written decision within" 15 business days. Second, if the dispute is not resolved to the employee's satisfaction, a written request for review must be filed directly with Morse within 15 days. Morse, or his "designated representative," will issue a written decision within 15 days. If the employee is still not satisfied, the final recourse is to submit a written request for arbitration to

the firm within 15 days, and the employee "<u>must</u> deposit with the Firm $500.00 or Five (5) Days' pay, whichever is less."

Lichon filed a response, arguing that all of her claims were related to the "sexual assault and harassment that she suffered at the hands of" Morse, and accordingly, do not "arise out of her employment and termination" from the Morse firm. Simply because a sexual assault happened at work does not mean that it is related to a plaintiff's employment. Further, "[b]eing the victim of sexual assault has no relationship to [Lichon's] employment obligations as a receptionist, and is not a foreseeable consequence of her employment." Therefore, Lichon is not required to arbitrate her claims. In fact, Lichon argued, the arbitration agreement "is neither valid nor enforceable. . . . The agreement is unenforceable as a matter of law because, in the context of the claims alleged here, the agreement is unconscionable, illusory and contrary to public policy."

The trial court held a hearing on defendants' motion on June 21, 2017. The parties argued consistent with their briefs. At the end of the hearing, the trial court granted defendants' motion, concluding on the record:

> I find that this is a valid and enforceable arbitration agreement. I find that all of plaintiff's claims are inextricably intertwined and therefore all fall within the arbitration agreement and the workplace policies. I also find that Michael Morse named individually is also bound by the terms of the arbitration agreement as her employer of Michael Morse, P.C., and I'm sending all of the claims to arbitration granting defendant[s'] [summary disposition] motion.

An order to the same effect was entered on June 22, 2017. Lichon filed a motion for reconsideration, which was denied in an order dated August 18, 2017. This appeal followed.

## B. SMITS I

*Smits I* and *Smits II* share an identical fact pattern, and arise out of Morse's alleged sexual assault of Smits while Smits was working for the Morse firm as a paralegal. In December of 2015, the Morse firm held a company Christmas party for all staff at the Masonic Temple in Detroit, Michigan. According to Smits, during that party, Morse approached her from behind and grabbed her breasts in front of two other senior attorneys. Smits immediately removed Morse's hands from her breasts.

In January of 2016, Smits reported the incident to the Human Resources department of the Morse firm. However, a representative from Human Resources told Smits that "her number one priority [was] to protect Morse's reputation." Smits then "expressed concerns" to one of the attorneys who had witnessed Morse sexually assault her. That attorney responded, "what was I supposed to do, you know how Michael is." In February of 2016, Smits emailed "various supervising employees" at the Morse firm, and indicated that she "was not comfortable working at the firm due to the Christmas incident," and tendered her resignation. After leaving the Morse firm, an attorney from the firm contacted Smits, and "indicated that [Morse] would offer two weeks' pay if [Smits] signed a non-disclosure agreement." Smits declined the offer. Morse then

personally contacted Smits and told her to "be careful" because given his connections in the legal community, he could make it difficult for Smits to find work.

On May 30, 2017, in *Smits I*, Smits filed a four-count complaint against the Morse firm and Morse individually. Smits alleged workplace sexual harassment violations in violation of the ELCRA against the Morse firm and Morse, sexual assault and battery against Morse individually, negligent and intentional infliction of emotional distress against the Morse firm and Morse individually, and negligence, gross negligence, and wanton and willful misconduct against the Morse firm and Morse individually.

In lieu of an answer, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7) due to a valid agreement to arbitrate, or alternatively, pursuant to MCR 2.116(C)(7) due to an expired statute of limitations. In sum, defendants argued that Smits' claims should be dismissed pursuant to MCR 2.116(C)(7) because Smits had signed "a valid and enforceable agreement to arbitrate all aspects of her employment, including, but not limited to, allegations of discrimination discipline, termination, and discrimination, and other state and federal employment laws." Alternatively, defendants argued, Smits' claims should be dismissed pursuant to MCR 2.116(C)(7) because as part of her employment, Smits had agreed to a shortened statute of limitations with respect to litigation, and that period had lapsed.

The MDRPA signed by Smits on February 7, 2014 is identical to the MDRPA signed by Lichon in Docket No. 339972. Additionally, defendants attached to their motion the Employee Acknowledgement Form from the Employee Policy Manual for the Morse firm, signed by Smits on February 20, 2014. The form provides, in relevant part:

> I agree that any claim or lawsuit relating to my employment with Michael J. Morse, P.C. must be filed no more than six (6) months after the date of employment action that is the subject of the claim or lawsuit unless a shorter period is provided by law. I waive any statute of limitations to the contrary.

Defendants also filed a supplement to their motion to dismiss. Following the trial court's order requiring defendants provide Smits with a copy of her personnel file and a complete copy of the "Firms Policies and Procedures," defendants supplemented their motion with an additional copy of the MDRPA, a copy of the Morse firm's Employee Policy Manual, and the Morse firm's Agreement for At-Will Employment and Agreement Resolution of Disputes. The Agreement for At-Will Employment and Agreement Resolution of Disputes, signed by Smits on September 29, 2015, provides in relevant part:

IV.     ARBITRATION OF DISPUTES:

> As a condition of my employment, I agree that any dispute or concern relating to my employment or termination of employment, including but not limited to claims arising under state or federal civil rights statutes, must be resolved pursuant to the Firm's Mandatory Dispute Resolution Procedure which culminates in final and binding arbitration. I have been provided with a copy of the Firm's Mandatory Dispute Resolution Procedure and agree to be bound by this Dispute Procedure.

Smits filed a response, arguing that her claims of sexual assault are not related to her employment such that they come within the purview of the MDRPA. Likewise, Smits argued, "the policy manual truncating the statute of limitations only applies to a 'claim or lawsuit relating to' " employment with the Morse firm. Because Smits' claims are not "related" to her employment, but rather stem "solely from Michael Morse's sexual assaults of [Smits,]" the arbitration provision and the policy manual are inapplicable to her claims. Smits also argued that the "arbitration provision itself is unenforceable because: it is procedurally and substantively unconscionable and illusory; Michael Morse personally is not a party to the MDRPA so it is inapplicable to him; and [d]efendants have forfeited the enforcement of the agreement by not adhering to the supposed dispute resolution process when plaintiff made multiple complaints to her supervisors and the Human Resources department regarding the assault and [d]efendants did nothing."

The trial court heard arguments on defendants' motion on July 6, 2017. At the end of the hearing, the trial court took the matter under advisement, and indicated its intent to issue a written opinion and order. On July 18, 2017, the trial court did enter its written opinion and order granting defendants' motion and directing this matter to arbitration. The trial court concluded that the MDRPA signed by Smits is "a valid and enforceable agreement, supported by consideration and mutuality of obligation." Further, based on the "allegations set forth in [Smits'] own verified complaint," her claims are related to her employment, and therefore governed by the MDRPA. Accordingly, this matter should proceed in arbitration. The trial court retained "jurisdiction only to enforce any such arbitration award."

Smits filed a motion for reconsideration, which was denied in an order dated November 3, 2017. This appeal followed.

## C. SMITS II

The *Smits II* case arises out of the same set of facts as the *Smits I* case. However, in *Smits II*, on July 25, 2017, Smits filed a three-count complaint solely against Morse as an individual, alleging sexual assault and battery, negligent and intentional infliction of emotional distress, and negligence, gross negligence, and willful and wanton misconduct.

In lieu of an answer, Morse filed a motion to dismiss pursuant to MCR 2.116(C)(7), and argued that Smits' complaint should be dismissed with prejudice because it was barred by the doctrine of res judicata, the doctrine of collateral estoppel, an agreement to arbitrate, and/or a six-month contractual statute of limitations. In response, Smits argued that because the trial court in *Smits I* had dismissed the case on jurisdictional grounds, it did not make a determination on the merits, and therefore she was not precluded from filing the instant case against Morse individually. Because Morse did not sign the MDRPA, there is no valid contractual agreement between Morse and Smits to arbitrate, "[a]bsent such a contract, [Smits] has the right to vindicate her rights in a court of law."

The trial court heard argument on Morse's motion on September 29, 2017. Ruling from the bench, the trial court found that:

[B]ecause that prior suit included the same parties as this current Complaint and because Plaintiff concedes any claims here "arise out of the same transaction or occurrence" as were alleged in her former Complaint, res judicata and [the] compulsory joinder rule preclude the subsequent action.

Defendant's Motion for Summary Disposition is accordingly granted under MCR 2.116(C)(7), no costs, fees, or penalties of any kind.

An order to the same effect was entered on October 2, 2017. This appeal followed.

## II. CONDUCT "RELATED TO EMPLOYMENT" UNDER THE MDRPA

In Docket Nos. 339972 and 341082, plaintiffs first argue that because the MDRPA limits the scope of arbitration to only those claims that are "related to" plaintiffs' employment, and because sexual assault at the hands of an employer or supervisor cannot be related to their employment, the MDRPA is inapplicable to their claims against Morse and the Morse firm. We agree.

This Court has previously announced that it will review a motion for summary disposition brought pursuant to MCR 2.116(C)(7) de novo. *Galea v FCA US, LLC*, 323 Mich App 360, 368; 917 NW2d 694 (2018). Specifically, this Court explained:

> We review de novo a trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(7). *Hicks v EPI Printers, Inc*, 267 Mich App 79, 84; 702 NW2d 883 (2005). A motion under MCR 2.116(C)(7) is appropriately granted when a claim is barred by an agreement to arbitrate. *Maiden v Rozwood*, 461 Mich 109, 118-119 n 3; 597 NW2d 817 (1999). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Id*. at 119. However, "a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*. Whether an arbitration agreement exists and is enforceable is a legal question that we review de novo. *Hicks*, 267 Mich App at 84.

Likewise, questions regarding the interpretation of contractual language are subject to de novo review. *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 715; 916 NW2d 218 (2018).

Neither plaintiffs nor defendants dispute the existence of an arbitration agreement. Both Lichon and Smits signed the MDRPA. However, the parties disagree on whether the conduct at issue here – an alleged sexual assault and battery perpetrated by Morse as an individual – is conduct related to Lichon's and Smits' employment with the Morse firm such that plaintiffs must arbitrate their claims against Morse and against the Morse firm. In short, this Court is asked to decide whether the sexual assault and battery of an employee at the hands of a superior is conduct related to employment. We conclude that it is not.

In *Bienenstock & Associates, Inc. v Lowry*, 314 Mich App 508, 515; 887 NW2d 237 (2016), this Court explained that an agreement to arbitrate presents a contractual matter between parties, and those parties will not be required to submit matters they did not agree to arbitrate to an arbitrator. Specifically, this Court articulated:

> "[A]rbitration is simply a matter of contract between parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration. *First Options of Chicago, Inc. v Kaplan*, 514 US 938, 943; 115 S Ct 1920; 131 L Ed 2d 985 (1995). In other words, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Howsam v Dean Witter Reynolds, Inc.*, 537 US 79, 83; 123 S Ct 588; 154 L Ed 2d 491 (2002), quoting *United Steelworkers of America v Warrior & Gulf Navigation Co*, 363 US 574, 582; 80 S Ct 1347; 4 L Ed 2d 1409 (1960). "In this endeavor, as with any other contract, the parties' intentions control." *Stolt-Nielsen SA v AnimalFeeds Int'l Corp*, 559 US 662, 682; 130 S Ct 1758; 176 L Ed 2d 605 (2010) (quotation marks and citations omitted). [*Bienenstock & Assoc, Inc.*, 314 Mich App at 515.]

Our Supreme Court has also announced that it is the party seeking to avoid the arbitration agreement that bears the burden of "establishing that his or her claims fall outside the ambit of the arbitration agreement." *Lebenbom v UBS Financial Services, Inc.*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 340973); slip op at 5, citing *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). "Moreover, when deciphering whether plaintiff's claims are covered by the parties' arbitration clause, this Court is not permitted to analyze 'the substantive merits' of plaintiff's claims. Rather, if the dispute is subject to arbitration, such matters are left to the arbitrator to decide." *Lebenbom*, ___ Mich App at ___; slip op at 5 (citation omitted).

As noted above, the MDRPA provides, in relevant part:

> This [MDRPA] shall apply to all concerns you have over the application or interpretation of the Firm's Policies and Procedures relative to your employment, including, but not limited to, any disagreements regarding discipline, termination, discrimination or violation of other state or federal employment or labor laws. This includes any claim over the denial of hire. This Procedure includes any claim against another employee of the Firm for violation of the Firm's Policies, discriminatory conduct or other state or federal employment or labor laws. Similarly, should the Firm have any claims against you arising out of the employment relationship, the Firm also agrees to submit them to final and binding arbitration pursuant to this Procedure.

The only exceptions to the MDRPA are for insurance benefits, claims for unemployment compensation, workers' compensation, or claims protected by the National Labor Relations Act. Additionally, the Morse firm's policies (Firm Policies) provide, in relevant part:

> We are committed to preventing workplace violence and making Michael J. Morse, P.C. a safe place to work. This policy explains our guidelines for dealing with intimidation, harassment, violent acts, or threats of violence that might occur

on our premises at anytime, at work-related functions, or outside work if it affects the workplace . . . .

The Firm does not allow behavior in the workplace at any time that threatens, intimidates, bullies, or coerces another employee, a client, or a member of the public. We do not permit any act of harassment, including harassment that is based on an individual's sex, race, religion, age, national origin, height, weight, marital status, disability, sexual orientation, or any characteristic protected by federal, state, or local law.

The sole issue for us to decide is whether the MDRPA "encompasses the subject matter of the dispute at issue in this case." *Altobelli*, 499 Mich at 299.

Generally speaking, to ascertain whether the subject matter of a dispute is of the type that parties intended to submit to arbitration, we again begin with the plain language of the arbitration clause. We then consider whether a plaintiff's particular action falls within that scope. We note that the gravamen of an action is determined by considering the entire claim. We look beyond the mere procedural labels to determine the exact nature of the claim. This is to avoid "artful pleading." [*Altobelli*, 499 Mich at 299-300 (citations omitted).]

See also *Lebenbom*, ___ Mich App at __; slip op at 5, where this Court announced: "we must review the arbitration clause, and determine 'whether the *subject matter*' of the instant dispute is covered by the arbitration clause." "If plaintiff's claims can be characterized as 'arguably' falling within the confines of the arbitration clause, any doubts are resolved in favor of arbitration, and the trial court should have granted defendant's motion to compel arbitration." *Lebenbom*, ___ Mich App at ___; slip op at 5-6, citing *DeCaminada v Coopers & Lybrand, LLP*, 232 Mich App 492, 500; 591 NW2d 364 (1999).

In Docket No. 339972, Lichon alleges that Morse repeatedly sexually assaulted and sexually harassed her in the workplace. Lichon claimed that Morse repeatedly touched her in a sexual manner during work hours and without her consent or her permission. The unwanted touching involved Morse groping Lichon's breasts and groin area, while pressing his own groin into her back and "audibly stating sexual comments, including . . . 'you make me so hard,' and 'I want to take you into my office.' " In Docket No. 341082, Smits claims that Morse sexually assaulted her at a firm sponsored Christmas party. Specifically, Smits claims Morse approached her from behind, and groped her breasts without permission or consent, and in front of other senior attorneys. It is therefore clear that the gravamen of plaintiffs' complaints are that while working at the Morse firm, they were sexually assaulted and/or harassed by Morse as an individual either during work hours or at work sponsored events.

Despite the fact that the sexual assaults may not have happened but for plaintiffs' employment with the Morse firm, we conclude that claims of sexual assault cannot be related to employment. The fact that the sexual assaults would not have occurred but for Lichon's and Smits' employment with the Morse firm does not provide a sufficient nexus between the terms of the MDRPA and the sexual assaults perpetrated by Morse. To be clear, Lichon's and Smits' claims of sexual assault are unrelated to their employment as a receptionist and paralegal,

respectively. Furthermore, under no circumstances could sexual assault be a foreseeable consequence of employment in a law firm. Accordingly, the trial courts erroneously granted defendants' motions to dismiss these actions and compel arbitration of plaintiffs' claims. Both Lichon and Smits shall be permitted to litigate their claims in the courts of this state because they fall outside the purview of the MDRPA. *Bienenstock & Assoc, Inc.*, 314 Mich App at 515.

This issue, whether the sexual assault and battery of an employee at the hands of a superior is conduct related to employment, is an issue of first impression in Michigan. Although the parties have provided extensive authority in support of their respective positions, most is persuasive authority and none is directly on point.[1] We therefore note that central to our conclusion in this matter is the strong public policy that no individual should be forced to arbitrate his or her claims of sexual assault. Though we acknowledge that "[t]he general policy of this State is favorable to arbitration[,]" *Detroit v A W Kutsche*, 309 Mich 700, 703; 16 NW2d 128 (1944), the idea that two parties would knowingly and voluntarily agree to arbitrate a dispute over such an egregious and possibly criminal act is unimaginable. See *Bienenstock & Assoc, Inc.*, 314 Mich App at 515 (citation omitted) ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") The effect of allowing defendants to enforce

---

[1] We note that our conclusion in this matter, that sexual assault is not related to employment in a law firm, and therefore claims of sexual harassment perpetrated by a superior are not subject to arbitration, is not an issue that has been directly confronted by other jurisdictions. However, our conclusion in this case is consistent with the general conclusion reached by other courts in this country that sexual assault is not related to employment. See *Jones v Halliburton*, 583 F3d 228 (5th Cir, 2009) (plaintiff, a federal contractor residing in overseas housing, did not agree to arbitrate her claims stemming from the sexual harassment and gang rape of her by coworkers, as those events did not arise within the scope of the employment relationship); *Doe v Princess Cruise Lines, Ltd*, 657 F3d 1204 (11th Cir, 2011) (a broadly drafted arbitration agreement did not encompass an employee being drugged and sexually assaulted by coworkers, as those claimed did not arise out of, nor were they related to, her employment. Further, such claims are not a foreseeable result of the employment relationship); *Hill v Hilliard*, 945 SW2d 948, 951-952 (Ky App, 1996) (plaintiff's allegations of rape against a supervisor did not arise out of her employment despite the fact that the alleged rape was committed "by a co-worker and occurred while on a business trip"); *Smith ex rel Smith v Captain D's, LLC*, 963 So2d 1116, 1121 (Miss, 2007) ("While recognizing the breadth of language in the arbitration provision, we unquestionably find that a claim of sexual assault neither pertains to nor has a connection with [plaintiff's] employment"); *Club Mediterranee, S.A. v Fitzpatrick*, 162 So3d 251, 252-253 (Fla App, 2015) (the fact that plaintiff's claim of sexual assault would not have arisen "but for the existence of her employment agreement is insufficient by itself to transform a dispute into one 'arising out of' her employment[.]" There was no nexus between the sexual assault and plaintiff's employment agreement); *Arnold v Burger King*, 48 NE3d 69, 84 (Ohio App, 2015) (plaintiff's claims "relating to and arising from the sexual assault [by a supervisor during work hours] exist independent of the employment relationship as they may be 'maintained without reference to the contract or relationship at issue.'" Moreover, "ongoing verbal and physical contact culminating in sexual assault . . . is not a foreseeable result of the employment").

the MDRPA under the facts of this case would effectively perpetuate a culture that silences victims of sexual assault and allows abusers to quietly settle these claims behind an arbitrator's closed door. Such a result has no place in Michigan law.

We caution future litigants that our conclusion with respect to the Morse firm is due to a very specific set of facts. Under different circumstances, we may conclude that the gravamen of plaintiffs' claims against the Morse firm are a failure to discipline, or adequately discipline, a fellow employee of the firm for offensive and egregious sexual misconduct and/or sexual harassment. Accordingly, we may agree with the trial courts that the subject matter of plaintiffs' claims against the Morse firm fall under the mantle of the MDRPA, and plaintiffs must arbitrate those claims in light of the language of the MDRPA. Recall that the MDRPA provides, in relevant part, that "This [MDRPA] shall apply to all concerns you have over the application or interpretation of the Firm's Policies and Procedures relative to your employment, including, but not limited to, any disagreements regarding *discipline*. . . ." (emphasis added.) In this case, however, the corporate structure of the Morse firm precludes such a result. Morse has never disputed that he is the owner of the Morse firm. In fact, the Morse firm's most recent annual report, filed with the Michigan Department of Licensing and Regulatory Affairs, Corporations, Securities & Commercial Licensing Bureau, shows that Morse is the President, Secretary, Treasurer, Director, and sole shareholder of the Morse firm. Essentially, Morse and the Morse firm are the same: Morse *is* the Morse firm and is solely legally responsible for the actions, or inaction, of the Morse firm.[2] Any recovery plaintiffs may obtain, from a jury or from an arbitrator, comes out of the same pocket. Under these circumstances, plaintiffs' claims against the Morse firm and Morse individually are so intertwined, that it makes them impossible to separate. In reality, a claim of failure to discipline a fellow employee of the firm for offensive and egregious sexual misconduct and/or sexual harassment in this case is essentially a claim that Morse failed to discipline himself for committing sexual assault and harassment in the workplace. Based on the foregoing, it is impossible to separate plaintiffs' claims against defendants.

Plaintiffs raise several other arguments related to the MDRPA, including whether the MDRPA is unconscionable or illusory, and whether Morse, a non-signatory, can enforce the MDRPA against plaintiffs in his capacity as an individual.[3] However, given our conclusion that the trial courts erroneously dismissed plaintiffs' complaints and compelled arbitration, we need not address plaintiffs' remaining claims of error.

---

[2] During oral argument, we took note of defendants' argument that the Morse firm's Firm Policies and Workplace Violence Prevention Plan, quoted *supra*, are expansive, which is unique. However we remain incredulous that these policies are stringently followed. In particular, given the nature of plaintiffs' claims, we question the sincerity of the Firm Policies as articulated by Morse, the sole shareholder of the Morse firm.

[3] It is undisputed that an agent of the Morse firm, not Morse, signed the MDRPA on behalf of the Morse firm with respect to the agreements between the Morse Firm, Lichon, and Smits. Additionally, no party has produced a copy of an MDRPA signed by Morse as an employee of the Morse firm agreeing to be bound as an individual by the terms of the MDRPA.

### III. *RES JUDICATA AND COMPULSORY JOINDER*

In Docket No. 340513, Smits argues that the Wayne Circuit Court erred in dismissing *Smits II*. Specifically, Smits argues on appeal that because the circuit court did not make a decision in *Smits I* on the merits, but rather dismissed the action on jurisdictional grounds, namely ordering the matter proceed in arbitration, dismissal on res judicata or compulsory joinder grounds "was grossly improper."

"The question whether res judicata bars a subsequent action is reviewed de novo by this Court." *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). Likewise, "we de novo review the proper interpretation and application of a court rule." *Garrett v Washington*, 314 Mich App 436, 450; 886 NW2d 762 (2016).

Here, the trial court did not dismiss *Smits II* solely on res judicata grounds. Rather, the trial court cited the doctrine of res judicata, as well as the compulsory joinder rule, when dismissing *Smits II*. Regarding the doctrine of res judicata, our Supreme Court explained in *Adair*:

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when the following three elements are met: (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. *Sewell v Clean Cut Mgt, Inc.*, 463 Mich 569, 575; 621 NW2d 222 (2001). This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). [*Adair*, 470 Mich at 121.]

Relatedly, the compulsory joinder rule is laid out in MCR 2.203(A), which provides:

> In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

"In determining whether two claims arise out of the same transaction or occurrence for purposes of MCR 2.203(A), res judicata principles should be applied." *Garrett*, 314 Mich App at 451.

In *Smits II*, Smits filed a complaint alleging sexual assault and battery, negligent and intentional infliction of emotional distress, and negligence, gross negligence, and willful and wanton misconduct against Morse individually. Smits' claims against Morse in *Smits II* are nearly identical to Smits' claims against Morse in *Smits I*, and in fact, arise out of the same

"transaction." Therefore, because, as discussed *supra*, Smits' claims against Morse as an individual are alive and well, the doctrine of res judicata is not implicated. However, the trial court correctly concluded that the compulsory joinder rule, as articulated in MCR 2.203(A), bars her claims in *Smits II*. Accordingly, the trial court did not err in dismissing *Smits II*.

## IV. ALTERNATE GROUNDS FOR AFFIRMANCE

Finally, in Docket No. 341082 and Docket No. 340513, defendants argue that as alternate grounds for affirmance, this Court should affirm the dismissal of *Smits I* and *Smits II* on the basis that Smits agreed to a contractual limitations period of six months.

This issue, although raised by defendants in the circuit court, was not addressed and decided. Accordingly, it is unpreserved. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). However, because the issue concerns "a legal question and all of the facts necessary for its resolution are present," *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015), this Court has the authority to address it. Regardless, we do not find defendants' alternate grounds for affirmance to be persuasive.

The portion of the policy manual that imposes a six month limitations period reads:

I agree that any claim or lawsuit relating to my employment with Michael J. Morse, P.C. must be filed no more than six (6) months after the date of employment action that is the subject of the claim or lawsuit unless a shorter period is provided by law. I waive any statute of limitations to the contrary.

Smits agreed to the contractual limitations period when she signed the Policy Manual Acknowledgment Form. However, this provision does not apply to the instant case. As discussed, Smits' claims against the Morse firm and Morse are not related to her employment as a paralegal at the Morse firm. Accordingly, the contractual limitations period does not apply to her claims, and defendants' argument is without merit.

In Docket No. 339972, we reverse, vacate the Oakland Circuit Court's June 22, 2017 order, and remand for proceedings consistent with this opinion.

In Docket No. 341082, we reverse, vacate the Wayne Circuit Court's July 18, 2017, written opinion and order, and remand for proceedings consistent with this opinion.

In Docket No. 340513, we affirm.


/s/ Kathleen Jansen
/s/ Jane M. Beckering