*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

S.P.,

    Plaintiff-Appellant/Cross-Appellee,

UNPUBLISHED
January 12, 2023

v

LAKELANDS GOLF AND COUNTRY CLUB and
ROBERT BAIDEL,

    Defendants-Appellees/Cross-
    Appellants.

No. 359710
Livingston Circuit Court
LC No. 21-31247-CD

Before: M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting in part and denying in part defendant Lakelands Golf and Country Club's (LGCC) motion to dismiss and compel arbitration. LGCC and defendant Robert Baidel (Baidel) both cross-appeal that same order. We affirm in all respects, except to note that to the extent the trial court may have dismissed, rather than stayed, Counts I through IV of plaintiff's complaint, it erred by doing so and those complaints are hereby reinstated and stayed.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff worked at LGCC as a bartender from 2017 until May 2021. In September 2021, plaintiff filed suit against LGCC and Baidel, alleging that Baidel had sexually assaulted her while she was working as a bartender on April 3, 2021. According to plaintiff, at the time of the alleged assault, Baidel was a "member-owner" of LGCC, while LGCC describes Baidel as a "former member." Plaintiff further alleged that she reported Baidel's assault to LGCC, but that LGCC "did not meaningfully respond and Plaintiff was forced to encounter Defendant Baidel at work." Plaintiff alleged that she was constructively discharged from her employment with LGCC in May 2021 "due to a traumatic work environment."

Plaintiff's complaint set forth six claims. Counts I, II, and III alleged that LGCC had violated the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, through sex discrimination (Count I), a hostile work environment (Count II), and retaliation (Count III). Count

-1-

IV was entitled "Constructive Discharge." Counts V and VI were common-law assault and battery claims against Baidel based on the alleged sexual assault. Defendants answered the complaint. LGCC subsequently filed a motion to dismiss and compel arbitration, arguing that plaintiff's claims were subject to arbitration under the mandatory arbitration provision of the LGCC employee handbook (the arbitration agreement), which plaintiff had signed in 2019. Baidel filed a concurrence with that motion and also argued that he was entitled to enforce the arbitration agreement despite not being a signatory to that agreement; additionally, Baidel argued that the question of the arbitrability of plaintiff's claims was, itself, a question for the arbitrator.

The trial court held a hearing on LGCC's motion on December 16, 2021. LGCC argued that all of plaintiff's claims, including the assault and battery claims, were related to the termination of her employment and therefore covered by the arbitration agreement. Baidel agreed with that argument and also argued that Baidel could enforce the arbitration agreement and that the arbitrability of plaintiff's claims should be decided by the arbitrator. Baidel asked the trial court to either stay or dismiss the case pending the arbitrator's decision on arbitrability and the resolution of arbitrable issues. Plaintiff responded that Baidel was not acting within the scope of his employment when he allegedly sexually assaulted plaintiff, and that the assault and battery claims were therefore unrelated to plaintiff's employment relationship with Lakelands and not covered by the arbitration agreement. Plaintiff also argued that her first three claims under the ELCRA were claims for sexual harassment and were not related to the termination of plaintiff's employment; therefore, they were not covered by the arbitration agreement. At best, plaintiff argued, only her claim for constructive discharge was covered by the arbitration agreement.

The trial court held that the issue of the arbitrability of plaintiff's claims was for the court to decide. The court then held that the first four counts of plaintiff's complaint were subject to the arbitration agreement and granted LGCC's motion with respect to those claims. The trial court denied LGCC's motion with regard to the assault and battery claims against Baidel, and stated that it was "just going to stay the case on those, on those matters until the arbitration process is completed." The court subsequently entered an order reflecting its ruling.

This appeal and the cross-appeals followed. After plaintiff's claim of appeal was filed, the trial court entered an order staying any arbitration proceedings and further trial court proceedings pending this Court's decision.

## II. MAIN APPEAL

On appeal, plaintiff does not challenge the trial court's ruling regarding the arbitrability of Counts I, III, and IV of her complaint, but argues that the trial court erred by determining that Count II of her complaint (hostile work environment) was subject to the arbitration agreement. Plaintiff also argues that the trial court should have stayed, rather than dismissed, Counts I through IV of her complaint, and that the trial court should *not* have stayed Counts V and VI, but rather

should have allowed those claims to move forward into discovery. We will address each argument in turn.[1]

## A. ARBITRABILITY OF COUNT II

Plaintiff argues that Count II of her complaint was not subject to the arbitration agreement. We disagree. We review de novo a trial court's determination that a claim is barred by an agreement to arbitrate. *Lebenbom v UBS Fin Servs*, 326 Mich App 200, 208; 926 NW2d 865 (2018). We also review de novo questions regarding the interpretation of contractual language. *Id.*

The goal of contractual interpretation is to ascertain the intent of the parties; to that end, clear and unambiguous contractual language will be interpreted according to its plain sense and meaning. *Id.* at 209 (citation omitted). Because of the strong policy promoting arbitration, ambiguity regarding whether a specific matter falls within the scope of an arbitration agreement is to be resolved in favor of submitting the matter to arbitration. *Id.* at 209-210. [T]he party seeking to avoid the arbitration agreement bears the burden of establishing that his or her claims fall outside the ambit of the arbitration agreement. *Id.* at 211, citing *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). In determining whether a claim falls within the scope of an arbitration agreement, "a reviewing court must look beyond the mere procedural labels to determine the exact nature of the claim to avoid artful pleading." *Id.* at 211 (quotation marks and citations omitted).

The arbitration agreement provides, in relevant part:

In consideration for your employment by the Club, it is agreed by the Club and the employee that all legal and equitable claims or disputes arising out of or in connection with any termination of employment shall be settled under the following procedure:

---

[1] Defendants also argue that plaintiff's appeal is not properly before this Court, because it is not an appeal taken from an order granting a motion to stay arbitration or otherwise a final order appealable by right. See MCL 691.1708(1)(b), MCR 7.202(6)(a)(i), (ii). We disagree. MCL 691.1708(1)(a) provides that "an appeal may be taken from . . . [a]n order denying a motion to compel arbitration." The trial court's order from which plaintiff appeals did, among other things, deny in part a motion to compel arbitration. Nothing in the language of MCL 691.1708(1) limits the scope of such an appeal to the portion of the order denying a motion to compel arbitration, and in the absence of authority to the contrary, we will not read such a limitation into the statute's unambiguous language. *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 39; 761 NW2d 269 (2008), citing *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

> A. The employee agrees to waive his/her right to litigate in a court of law claims arising out of the termination of his/her employment, and agrees instead to submit the claims to arbitration. . . .[2]

Our Supreme Court has stated, in addressing an arbitration clause that referred to claims "relating to . . . employment or termination of employment,"[3] that the operative question is whether the claim could be maintained without reference to the employment contract or relationship at issue. *Lichon v Morse*, 507 Mich 424, 444; 968 NW2d 461 (2021). In other words, if a non-employee was subject to the same alleged treatment, could he or she have brought the same claims? *Id.* at 470.

Count II of plaintiff's complaint alleges that plaintiff "was subjected to unwelcome verbal or physical conduct due to her sex," "the unwelcome conduct was based on [p]laintiff's sex," and plaintiff was "sexually harassed." Count II further alleges that "[t]he unwelcome conduct affected a term and condition of Plaintiff's employment and/or had the purpose or effect of unreasonably interfering with [p]laintiff's work performance and/or created [sic] intimidating, hostile, or offensive work environment" in violation of the ELCRA.

The ELCRA provides that an employer shall not "[s]egregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment." MCL 37.2202(1)(c). Although plaintiff separates her claim for "sex discrimination" (Count I) from her claim for "hostile work environment" (Count II), the ELCRA is clear that proof of a hostile work environment is a method of establishing a claim for sexual harassment, and "discrimination because of sex includes sexual harassment." MCL 37.2103(i) and (i)(*iii*). Because proving sexual harassment is one method of proving sex discrimination, Count I and Count II of plaintiff's complaint, when read beyond their procedural labels, *Lebenbom*, 326 Mich App at 211, are essentially one claim for sex discrimination; indeed, Count II explicitly incorporates by reference the allegations of Count I.

Establishing proof of hostile work environment sexual harassment requires proof of the following elements:

---

[2] We note that the opening paragraph of this provision describes that it is establishing a procedure for settling claims or disputes "arising out of or in connection with any termination of employment." The language used in the subsequent description of the procedure (as set forth in sub-part A) does not use that precise language but instead states that claims "arising out of the termination of . . . employment" will be submitted to arbitration. Plaintiff acknowledges on appeal, however, that "the contract's arbitration clause . . . is limited to disputes and claims 'arising out of or in connection with any termination of employment.' " Therefore, the parties agree that the arbitrable claims include not only claims "arising out of" a termination of employment, but also claims arising "in connection with" a termination of employment, and that any difference in contractual terminology was not intended to convey otherwise.

[3] As we will address later in this opinion, we appreciate that the arbitration agreement in this case referred to claims "arising out of or in connection with any termination of employment."

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior [vicarious liability of the employer]. [*Chambers v Trettco, Inc v* 463 Mich 297, 311; 614 NW2d 910 (2000)].

It is clear from these elements, and our case law, that a claim for hostile work environment sexual harassment is a claim that requires an employment relationship; indeed, the essence of such claims involves a determination of an *employer's* liability. See *id.* at 311-312 (discussing employer liability in hostile work environment cases). Therefore, Count II of plaintiff's claim arises out of her employment. *Lichon*, 507 Mich at 471.

However, plaintiff notes that the language of the arbitration agreement limits its scope to claims arising out of, or connected to, *the termination* of her employment. Plaintiff is correct that this language is narrower in scope than the language of the agreement in *Lichon*. However, and again looking beyond procedural labels, it is clear that plaintiff's claim is one of a hostile work environment arising out of or in connection with her alleged constructive termination. Plaintiff alleges in the factual allegations portion of her complaint that she was "constructively discharged due to a traumatic work environment," and alleges in Count I that LGCC took adverse employment actions against her, including termination, based on both sex discrimination and retaliation. Both statements are explicitly incorporated by reference into Count II. Further, Count IV of plaintiff's complaint alleges that LGCC "deliberately made the working conditions so intolerable that it forced Plaintiff into an involuntary resignation." Although plaintiff argues that she, in theory, could have brought a hostile work environment claim even if she had not been constructively discharged, plaintiff's allegations and the proofs that they will require are so interwoven with her alleged constructive discharge that they necessarily must be construed as arising out of or in connection with the alleged constructive discharge. At the very least, an ambiguity exists regarding whether plaintiff's claim for hostile work environment arises out of or in connection with her alleged constructive termination; such an ambiguity should be resolved in favor of arbitration. *Lebenbom*, 326 Mich App at 211. The trial court did not err by submitting Count II of plaintiff's complaint to arbitration.[4]

## B. DISMISSAL OF ARBITRABLE CLAIMS

Plaintiff also argues that the trial court erred by dismissing Counts I through IV of her complaint, rather than staying them pending arbitration. If indeed the trial court's order was meant

---

[4] We also do not find plaintiff's conflation of claims for sexual *assault* with workplace sexual harassment claims to be persuasive, as we will discuss further in analyzing LGCC's cross-appeal.

to dismiss those counts, we agree. We review de novo issues involving the interpretation of statutes and court rules.

MCL 691.1687 governs motions to compel or stay arbitration, and provides in relevant part that "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim." See MCL 619.1687(7). MCR 3.602(C) provides that, apart from specific circumstances not present in this case, "an action or proceeding involving an issue subject to arbitration must be stayed if an order for arbitration or motion for such an order has been made under this rule. If the issue subject to arbitration is severable, the stay may be limited to that issue."

The word "shall" generally indicates a mandatory provision; it is not permissive. *Smitter v Thornapple Twp*, 494 Mich 121, 136; 833 NW2d 875 (2013). By contrast, the word "may" generally designates discretion. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008).

In this case, the trial court's order states in relevant part that "Defendant's motion is granted in part and denied in part.* Counts I, II, III, IV are subject to arbitration. Counts V (Assault) and VI (Battery) against Baidel are not subject to arbitration [.] However, this matter is stayed pending the arbitration except that Defendant Baidel will sit for a deposition within 30 days and answer written discovery with 14 days." Below these statements is written the following: "*Defendant Lakelands [sic] MSD is granted as to Counts I, II, III & IV. Defendant Lakelands [sic] MSD is denied as to Counts V and VI." It is far from clear whether any statement in this order actually dismisses Counts I, II, III, and IV. In fact, the order states that "this matter is stayed pending arbitration." However, if the phrase "Defendant Lakelands [sic] MSD is granted as to Counts I, II, III, IV" effected a dismissal of those claims, the trial court erred by doing so. MCL 619.1687(7) and MCR 3.602(C) clearly provide that the trial court must stay arbitrable claims and, in its discretion, may either stay the entire action or sever the arbitrable claims from the non-arbitrable. If Counts I through IV of plaintiff's complaint were indeed dismissed, they are hereby reinstated and stayed pending the results of arbitration. MCR 7.216(7).

## C. STAY OF COUNTS V AND VI

Plaintiff also argues that the trial court erred by staying Counts V and VI pending the arbitration, rather than allowing them to proceed. We disagree. "A trial court has the inherent authority to control its own docket." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102, 106 (2016), citing to *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006) ("[T]rial courts possess the inherent authority . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). "An exercise of the court's 'inherent power' may be disturbed only upon a finding that there has been a clear abuse of discretion." *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). An abuse of discretion occurs when a court chooses an outcome outside the range of principled outcomes. *Maldonado,* 476 Mich at 388.

In addition to its inherent authority, the trial court was authorized by MCL 619.1687(7) and MCR 3.602(C) to exercise its discretion in choosing either to stay the entire action or sever and stay only the arbitrable claims. Plaintiff argues that the trial court abused its discretion in

staying Counts V and VI because their resolution is not dependent on the results of the arbitration of Counts I through IV. However, the non-binding federal authority cited by plaintiff in support of this proposition involves a federal judge denying a motion for the stay of non-arbitrable claims. See *Leafguard of Kentuckiana, Inc v Leafguard of Kentucky, LLC*, 138 F Supp 3d 846, 859 (ED KY 2015). It does not follow that a trial court's decision to stay non-arbitrable claims in a similar situation would be an abuse of discretion; the abuse of discretion standard "acknowledges that there will be circumstances in which there will be no single correct outcome, but rather, there will be more than one reasonable and principled outcome." *Maldonado*, 476 Mich at 388 (citation omitted). Plaintiff has not demonstrated that the trial court's decision to allow the arbitration to proceed before litigation of the non-arbitrable claims, rather than the converse, was not a reasonable and principled outcome. The trial court noted that Baidel would be an important witness in the arbitration as well as a defendant in the trial court proceedings; further, counsel for LGCC estimated that the arbitration could be concluded relatively quickly. Under the circumstances, it is not outside the realm of principled outcomes for the trial court to stay the remaining proceedings until the arbitration was completed in the interest of an orderly and expeditious disposition of the case. *Maldonado*, 476 Mich at 376.

## III. LGCC'S CROSS APPEAL

On cross-appeal, LGCC argues that the arbitration agreement also applies to plaintiff's claims against Baidel, and that the trial court erred by holding otherwise. Additionally, LGCC argues that the trial court should have dismissed all of plaintiff's claims. We disagree with both assertions.

## A. ARBITRABILITY OF COUNTS V AND VI

LGCC argues that plaintiff's common-law claims for assault and battery against Baidel are governed by the arbitration agreement. We disagree. Again, we review de novo the interpretation of contractual language. *Lebenbom*, 326 Mich App at 208.

LGCC argues that plaintiff's claims against Baidel arise out of the alleged constructive termination of her employment, noting that a "factual connection" links those claims and her alleged termination, i.e., plaintiff's allegations that the assault and battery happened at her place of employment while she was employed by LGCC. But our Supreme Court has specifically stated that "not every factual connection between a plaintiff's claim and her job makes the claim relative to or related to employment." *Lichon*, 507 Mich at 439. "[M]ore than the barest factual connection" is required for a claim to be related to employment; rather, again, the question is "whether the action could be maintained without reference to the contract or relationship at issue." *Id.* at 440. The Court in *Lichon* discussed with approval an Eleventh Circuit case involving both employment claims and common-law tort claims, *Doe v Princess Cruise Lines, Ltd*, 657 F3d 1204, 1218-1219 (CA 11, 2011), noting that the federal court, in holding that certain common-law claims, including the claim that "the plaintiff was drugged and raped," were not subject to arbitration because they did not depend on the employment relationship. *Lichon*, 507 Mich at 443. The Eleventh Circuit noted that "if a passenger on the ship had been subjected to the same treatment as the plaintiff, he or she could have brought the same claims." *Id.*, citing *Doe*, 657 F3d at 1220.

In this case, Counts V and VI of plaintiff's complaint allege claims of common-law assault and battery. Plaintiff alleges that Baidel's sexual assault caused her physical injury and mental and emotional injuries. Neither claim makes reference to plaintiff's employer or alleged constructive termination. And a guest or passerby who had been subjected (allegedly) to the same treatment by Baidel, whether on LGCC's premises or not, could have brought the same claims against him. *Id.* Under these circumstances, the trial court did not err by concluding that plaintiff's tort claims against Baidel were not subject to arbitration.[5] Because we affirm the trial court on this ground, we need not address the parties' arguments concerning Baidel's ability to enforce the arbitration agreement as a non-signatory to the contract.

## B. DISMISSAL OF ARBITRABLE CLAIMS

LGCC also argues that the trial court should have dismissed all of plaintiff's claims in favor of arbitration. We disagree. Because we affirm the trial court's determination that Counts V and VI were not arbitrable, those claims should not have been dismissed on that ground at this stage of the proceedings. Further, as discussed in Section II(B) of this opinion, the trial court was required by statute and court rule to stay the arbitrable claims (Counts I, II, III, and IV) in this case; LGCC's citation to non-binding federal authority does not alter this conclusion. See *Linsell v Applied Handling, Inc*, 266 Mich App 1, 16; 697 NW2d 913 (2005).[6]

## IV. BAIDEL'S CROSS-APPEAL

On cross-appeal, Baidel argues that the trial court erred by determining which of plaintiff's claims were arbitrable, rather than submitting all of plaintiff's claims to the arbitrator for such a determination. We disagree. Baidel also argues that he is entitled to enforce the arbitration agreement as a non-signatory. As stated, we do not need to address Baidel's ability to enforce the arbitration agreement.

The arbitration agreement does not explicitly provide the arbitrator with the power to rule on his or her own jurisdiction and the scope of the arbitration agreement; however, as Baidel notes, the agreement does state that arbitrations under the agreement "shall be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (the AAA rules) in effect at the time the demand for arbitration is made." Baidel

---

[5] Not only did Counts V and VI not arise out of or in connection with plaintiff's employment, but they clearly did not arise out of or in connection with the *termination* of her employment.

[6] We note that a federal court's decision to stay all or part of a case due to a pending arbitration may implicate the exercise, or surrender, of federal jurisdiction and abstention doctrines, see, e.g., *Moses H. Cone Mem Hosp v Mercury Constr Corp*, 460 US 1, 27; 103 S Ct 927; 74 L Ed 2d 765 ("We have no occasion in this case to decide whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that [the] *Colorado River* [abstention doctrine] counsels in favor of deferring to a parallel state-court suit. We can say, however, that a stay is as much a refusal to exercise federal jurisdiction as a dismissal."). Without discussing the issue at length, suffice it to say that these different concerns make relying on federal authority concerning stays of litigation a questionable proposition at best.

further notes that the AAA rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

Michigan's uniform arbitration act, MCL 691.1681 *et seq*., provides for the trial court to determine arbitrability in the first instance. See MCL 691.1686(2). However, MCL 691.1684(1) provides in relevant part that "the parties may vary the effect of the requirements of this act to the extent permitted by law." Baidel argues that MCL 691.1684(1) therefore permits the parties to allow the arbitrator to have the power to determine initial issues of arbitrability and the existence and scope of the arbitration agreement, and that the parties did so in this case by agreeing to conduct arbitrations held under the agreement according to the AAA rules. We disagree. Clear and recent published authority states that "the arbitrability of an issue is a question for the court to decide." *Registered Nurses, Registered Pharmacists Union v Hurley Medical Center*, 328 Mich App 528, 531; 938 NW2d 800 (2019), quoting *Burns v Olde Discount Corp*, 212 Mich App 576, 580; 538 NW2d 686 (1995) ("The existence of an arbitration contract and the enforceability of its terms are judicial questions that cannot be decided by the arbitrator. To ascertain the arbitrability of an issue, the court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract.") Further, to the extent the parties can agree to have the arbitrator decide issues of arbitrability, they must do so "clearly and unmistakably"; if such an agreement is not apparent from the face of the agreement, a reviewing court should presume that the parties intended that the court decide the "gateway questions" of arbitrability. *Bienenstock & Associates, Inc v Lowry*, 314 Mich App 508, 516; 887 NW2d 237 (2016). These gateway questions include "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* (citation omitted).

Baidel has presented this Court with no published authority indicating that, under Michigan's uniform arbitration act, the mere agreement to conduct arbitrations in accordance with the AAA rules is sufficient to indicate a clear and unmistakable agreement that "gateway" questions of arbitrability should be submitted to the arbitrator rather than the courts. Rather, Baidel argues that federal cases under the Federal Arbitration Act should be persuasive and their reasoning adopted. But in light of binding Michigan precedent, we are not free to do so. MCR 7.215(C)(2); (J)(1).

In this case, the arbitration agreement does not explicitly indicate that gateway questions will be submitted to the arbitrator. And to the extent that it incorporates the AAA rules, the agreement merely provides that "arbitration proceedings" shall be conducted in accordance with the AAA rules, and further that "[t]he arbitrator's authority shall be limited to determining whether [LGCC's] action in terminating the employee was unlawful . . . ." Nothing in the arbitration agreement evinces a clear and unmistakable agreement to allow the arbitrator to decide gateway questions; indeed, the arbitrator's authority is explicitly limited to a determination of whether LGCC's actions related to the employee's termination were unlawful. The trial court did not err by not submitting all of plaintiff's claims to the arbitrator for an initial determination of arbitrability.

## V. CONCLUSION

In the main appeal, we affirm the trial court's determination that Count II of plaintiff's complaint was subject to arbitration. We also affirm the trial court's decision to stay the proceedings pending arbitration. However, to the extent the trial court may have dismissed, rather than stayed, any of plaintiff's claims that were sent to arbitration, it erred by doing so, and those claims are reinstated and stayed.

We affirm the trial court in both cross-appeals.


/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle