*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VASCULAR MANAGEMENT SERVICES OF
NOVI, LLC, and VCOA MANAGEMENT, LLC,

UNPUBLISHED
March 9, 2023

Plaintiffs-Appellants,

v

No. 360368
Oakland Circuit Court
LC No. 2021-191539-CB

EMG PARTNERS, LLC, ENVISION MEDICAL
GROUP, PLLC, and VILLAGEMD EASTERN
MICHIGAN, LLC,

Defendants-Appellees.

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs, Vascular Management Services of Novi, LLC, and VCOA Management, LLC, appeal as of right an order compelling plaintiffs and defendants, EMG Partners, LLC; Envision Medical Group, PLLC; and VillageMD Eastern Michigan, LLC, to participate in binding arbitration. Plaintiffs also challenge a prior order denying their first motion for preliminary injunctive relief. We affirm but remand to the circuit court for further proceedings regarding arbitrability.

## I. BACKGROUND

In January 2017, plaintiffs and EMG Partners entered into an operating agreement through which EMG Partners and VCOA Management became 50% members of Vascular Management Services of Novi, and Mordechai Grun was named manager of Vascular Management Services of Novi. The operating agreement contained an arbitration clause. Later that month, Vascular Management Services of Novi and Envision Medical Group entered into a management services agreement. Under the management services agreement, Vascular Management Services of Novi was required to "select and furnish the Practice with such space, fixed and mobile, as [was] reasonably required for the proper operation of the Practice's business, based on its volume and service contracts, including any necessary build-out, repair or replacement of such space. . . ."

-1-

Envision Medical Group was required to operate the Practice "at least three (3) days per week." The management services agreement did not contain an arbitration clause.

VillageMD eventually expressed an interest in acquiring certain assets of Envision Medical Group. While VillageMD was not interested in purchasing the management services agreement, VillageMD and Grun engaged in negotiations concerning "a new Management Services Agreement" with Vascular Management Services of Novi. The negotiations were ultimately unsuccessful. VillageMD's negotiations with Envision Medical Group proceeded forward. The acquisition between VillageMD, Envision Medical Group, and others was finalized on December 2, 2021, through an Asset Purchase Agreement, wherein VillageMD "acquired certain of Envision [Medical Group's] assets." The management services agreement was "specifically excluded from the Asset Purchase Agreement." Because VillageMD does not consider vascular services to be part of its business model, the vascular services that were once provided by Envision Medical Services were discontinued.

Plaintiffs filed suit that same month. In the 10-count complaint, plaintiffs requested injunctive relief and monetary damages. Plaintiffs also filed an emergency motion for injunctive relief, requesting the trial court enter an ex parte order or schedule a show cause hearing as to why a preliminary injunction should not issue.

In opposing the motion for preliminary injunctive relief, defendants' argued that plaintiffs had an adequate remedy at law and were unlikely to succeed on the merits of their claims, while VillageMD also argued that plaintiffs' claims were subject to arbitration under the operating agreement. The initially scheduled show cause hearing was adjourned several times for reasons that will be discussed later in this opinion. In the meantime, in lieu of filing an answer to the complaint, defendants filed a joint motion for summary disposition under MCR 2.116(C)(7) (dismissal proper because of binding arbitration agreement).

The show cause hearing was held in late January, 2022. At the beginning of the hearing, plaintiffs' counsel requested the trial court consider documentation that was not attached to their motion for preliminary injunctive relief. After defendants' counsel objected because they had not been provided with the documentation before the hearing, the trial court held it would not consider the documentation. The trial court expressed a willingness to adjourn the hearing, but plaintiffs wanted to move forward. During oral arguments, plaintiffs requested the trial court "tell the doctors who are now Village MD employees that they have to renew their obligations of operating the Vascular Services clinic at least three days a week and they have to actually do it in good faith." Plaintiffs also requested the trial court "direct Village MD [sic] to put any monies that they're going to pay" in the future "into the court." After hearing oral arguments from defendants, which included defendants referencing the pending motion for summary disposition, the trial court ruled:

> The motion before the court is for preliminary injunction in this matter but from what I've heard from all sides, specifically the plaintiff[s], it's really a matter of money damages, and money damages do not equate into this court issuing an injunction of any kind, so as it relates to the request for a [temporary restraining order] and/or a preliminary injunction the court is denying that request.

As it relates to the request to escrow monies, that wasn't part of the motion and the court is not going to deal with that at this time. And the court will certainly review the summary disposition motion and see whether or not we can advance the hearing on that [sic] expedited matter.

The trial court entered orders that same day (1) denying plaintiffs' motion for injunctive relief and (2) requiring defendants to file a motion to compel arbitration by February 2, 2022, and setting a briefing schedule and oral arguments for February 9, 2022.

On February 2, 2022, plaintiffs filed a second motion for preliminary injunctive relief. Plaintiffs renewed their requests that the trial court order defendants to continue to perform medical services and procedures at the clinic pursuant to the management services agreement, and also requested the trial court "direct that any unpaid funds from the sale of the Envision Defendant's assets be transferred to the registry of th[e] Court or direct the Envision Defendants not to distribute any of the asset sale proceeds. . . ."

As ordered, defendants also filed a timely joint motion to compel arbitration. The motion was essentially identical with the motion for summary disposition, with the exception that it provided authority concerning a trial court's authority to compel arbitration under the Uniform Arbitration Act, MCL 691.1681 *et seq.*, and MCR 3.602(A). Plaintiffs opposed the motion, arguing there was not an enforceable arbitration agreement between the parties, and that defendants should be judicially estopped from relying on the arbitration clause contained in the operating agreement because defendants had argued in response to plaintiffs' motion for preliminary injunction that the operating agreement was not enforceable against them.

The court granted defendants' joint motion to compel arbitration, dismissed plaintiffs' complaint, and ordered all claims into arbitration. The trial court did not rule on plaintiffs' second motion for preliminary injunctive relief. This appeal followed. After filing the claim of appeal, plaintiffs filed an arbitration demand. Defendants moved to dismiss this appeal, arguing plaintiffs' voluntary action rendered this appeal moot, but the motion was denied. *Vascular Mgt Servs of Novi, LLC v EMG Partners, LLC*, unpublished order of the Court of Appeals, entered August 9, 2022 (Docket No. 360368).

## II. MOOTNESS

VillageMD continues its argument that plaintiffs' arguments on appeal are moot. We again reject that argument.

"Michigan Courts exist to decide actual cases and controversies. . . . A matter is moot if [a] Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Bailey v Antrim Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357838); slip op at 3 (alterations in original; quotation marks and citation omitted). "A voluntary satisfaction of a judgment may render a case moot. If, however, the judgment is involuntarily satisfied, the appeal is not moot." *Trahey v Inkster*, 311 Mich App 582, 591; 876 NW2d 582 (2015) (citation omitted).

Plaintiffs filing an arbitration demand was an involuntary act taken to comply with a court order. "A person may not disregard a court order simply on the basis of his [or her] subjective view that the order is wrong or will be declared invalid on appeal." *In re Contempt of Dudzinski*,

257 Mich App 96, 111; 667 NW2d 68 (2003). Rather, "[a] party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Id*. at 110 (quotation marks and citation omitted). Accordingly, a party that "believes that [an] order is incorrect [has] the remedy [] to appeal, but absent a stay, [must] comply promptly with the order pending appeal." *Id*. at 112 (quotation marks and citations omitted). By initiating arbitration, after filing their claim of appeal, plaintiffs merely complied with the mandatory provision of the trial court's order. This involuntary action did not render the issues raised on appeal moot.

## III. PLAINTIFFS' FIRST MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs argue that the trial court (1) abused its discretion by denying their first motion for injunctive relief, and (2) made several procedural errors on the way to that decision.

### A. STANDARDS OF REVIEW

"[A] trial court's decision to grant injunctive relief is reviewed for an abuse of discretion. An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Johnson v Mich Minority Purchasing Council*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357979); slip op at 3 (alteration in original; quotation marks and citations omitted). "The factual findings that a trial court makes in the process of deciding whether to grant a preliminary injunction are reviewed for clear error." *Slis v State*, 332 Mich App 312, 335; 956 NW2d 569 (2020) (quotation marks and citation omitted). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (quotation marks and citation omitted). A trial court's decision to adjourn a proceeding is reviewed for an abuse of discretion, *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 27; 930 NW2d 393 (2018), while its interpretation of court rules is reviewed de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

### B. ANALYSIS

#### 1. MERITS OF PLAINTIFFS' FIRST MOTION FOR INJUNCTIVE RELIEF

"The purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights," and "[t]he moving party has the burden of demonstrating that a preliminary injunction should be issued." *Johnson*, ___ Mich App at ___; slip op at 3-4 (quotation marks and citation omitted). When determining whether to grant a preliminary injunction, the trial court must evaluate four factors, which are:

> (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. [*Id*., slip op at 4 (quotation marks and citation omitted).]

"Economic injuries generally are not sufficient to demonstrate irreparable injury because such injuries typically can be remedied by damages at law." *Sandstone Creek Solar, LLC v Twp of Benton*, 335 Mich App 683, 706; 967 NW2d 890 (2021).

While plaintiffs are correct that the trial court did not directly address each of the four preliminary injunction elements, it remains true that "a preliminary injunction should not issue where an adequate legal remedy is available." *Johnson*, ___ Mich App at ___; slip op at 4 (alteration omitted; quotation marks and citations omitted).

Here, the trial court did not err in concluding that an adequate remedy at law existed. While "[t]he threat of bankruptcy and the possibility of going out of business can constitute irreparable harm," *Slis*, 332 Mich App at 361, plaintiffs did not provide evidence to support the argument that their business enterprise would be compromised or destroyed if a preliminary injunction did not issue. Importantly, "[w]hether the loss of customer goodwill amounts to irreparable harm often depends on the significance of the loss to the plaintiff's overall economic well-being." *Id*. at 362 (quotation marks and citation omitted). Because plaintiffs failed to provide sufficient evidence to show they would suffer an injury "both certain and great," i.e., irreparable harm if a preliminary injunction did not issue, the trial court did not err in its conclusion. *Id*., at 361. Importantly, it was plaintiffs' burden to establish "that a preliminary injunction should be issued," see MCR 3.310(A)(4), and "[t]he mere apprehension of future injury or damage cannot be the basis for injunctive relief," *Johnson*, ___ Mich App at ___; slip op at 4 (quotation marks and citations omitted).

To show that irreparable harm would have occurred absent an injunction, plaintiffs cite provisions in the operating agreement and the management services agreement where the contracting parties agreed plaintiffs were not required to establish irreparable harm in order to obtain equitable relief. However, plaintiffs, as the moving parties, were required to "demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty." See *Slis*, 332 Mich App at 361 (quotation marks and citations omitted). Plaintiffs failed to do so for the reasons already discussed, and we are unaware of any binding authority providing that a contractual provision *alone* entitles plaintiffs to a finding of irreparable harm.

While plaintiffs argue they should have been granted an evidentiary hearing, plaintiffs were granted a show cause hearing, which was held 47 days after plaintiffs filed their first motion for a preliminary injunction. Plaintiffs did not offer testimony at the show cause hearing, and they rejected the trial court's offer to adjourn so testimony and other evidence could be offered to support a showing of irreparable harm. We do not permit parties to harbor their own error as an appellate parachute. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Additionally, we fail to see how plaintiffs would have been entitled to relief on their request for specific performance. Specific performance is an equitable remedy that permits a court to enforce a contract when the plaintiff does not otherwise have an adequate remedy at law. *Continental & Vogue Health Studios, Inc v Abra Corp*, 369 Mich 561, 567; 120 NW2d 835 (1963); *Zurcher v Herveat*, 238 Mich App 267, 300; 605 NW2d 329 (1999). "[A] [p]laintiff seeking specific performance of [the] contract has [the] burden of proving all the elements to establish a contract." *Fisk v Fisk*, 328 Mich 570, 574; 44 NW2d 184 (1950) (quotation marks and citation

omitted). "The essential elements of a valid contract are the following: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005) (quotation marks and citation omitted).

Plaintiffs argued at the show cause hearing the trial court should "tell the doctors who are now Village MD employees that they have to renew their obligations of operating the Vascular Services clinic at least three days a week and they have to actually do it in good faith." Under § 3.1 of the management services agreement, Envision Medical Group was required to operate "[t]he Practice . . . at least three (3) days per week." While the management services agreement acknowledges Envision Medical Group "provides professional services through its employed and/or contracted osteopathic and allopathic physicians," there is no evidence plaintiffs contracted with individual doctors to provide vascular procedures at Vascular Management Services of Novi's facility. Indeed, individual physicians are not even named in the management services agreement. Rather, Envision Medical Group and Vascular Management Services of Novi agreed Envision Medical Group would "have the sole and exclusive authority to employ or contract with Physicians, including the authority to promote, discipline, suspend and terminate Physicians." Because plaintiffs failed to present evidence of a contractual agreement between plaintiffs and the individual doctors who once worked for Envision Medical Services, plaintiffs were not entitled to that specific performance. See *Zak v Gray*, 324 Mich 522, 526; 37 NW2d 550 (1949) ("[S]pecific performance will be decreed where its effect will be to give to each party that for which he contracted and will work no wrong or injustice to either.").[1]

The trial court did not abuse its discretion by denying plaintiffs' first motion for preliminary injunctive relief. Nor did it abuse its discretion when it refused to address plaintiffs' "request that the remaining 40% of the purchase price be placed in escrow," as plaintiffs raised this argument for the first time at oral arguments, which is why the trial court declined to consider it. It is not an abuse of discretion for a trial court to decline to consider a new, complex argument raised for the first time during a show cause hearing. *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016).[2]

---

[1] Jurisdiction to order specific physicians to comply with the Management Services Agreement likely would prove difficult, as the physicians were not parties to the complaint, nor served with the complaint. *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 274; 803 NW2d 151 (2011) (trial courts "cannot adjudicate an in personam controversy without first having obtained jurisdiction over the defendant by service of process") (alterations, quotation marks, and citation omitted). For this same reason, requiring physicians to comply with a contract to which they were not parties would have harmed the physicians more than it would have harmed plaintiffs by not entering the order. Depriving the physicians of their right to be heard would undoubtedly be against the public interest, as would requiring them to perform medical services even though they were not contractually obligated to do so.

[2] Plaintiffs incorrectly argue in a footnote that "the Trial Court ignored [their] claim that their trade secrets and confidential information will fall into the hands of a competitor intending to operate in

## 2. PROCEDURAL ISSUES

Plaintiffs argue the trial court twice improperly adjourned the show cause hearing on plaintiffs' first motion for preliminary injunctive relief, which resulted in the hearing not being held until 47 days after the motion was filed, and resulted in a change in the status quo. We conclude that even if plaintiffs could establish an error on the part of the trial court, the error was harmless. See MCR 2.613(A). At the time plaintiffs' first motion for injunctive relief was filed, the Asset Purchase Agreement had already been executed. Thus, the fact that most of the relief requested in the motion had already been rendered moot at the time the show cause hearing was held cannot be attributed to the trial court. Additionally, for the reasons already discussed, plaintiffs were not entitled to injunctive relief because they failed to establish irreparable harm and could not establish they were likely to prevail on their request for specific performance. We fail to see how the trial court's purported decision to delay the show cause hearing impacted the outcome. See *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 307; 968 NW2d 367 (2021).[3]

## IV. DEFENDANTS' MOTION TO COMPEL ARBITRATION

### A. THE TRIAL COURT'S JANUARY 26, 2022, ORDER

Plaintiffs argue the trial court's January 26, 2022 order improperly ordered defendants to file a motion to compel arbitration and improperly expedited the briefing schedule on the motion in violation of MCR 2.116(G)(1)(a)(i).

### 1. STANDARDS OF REVIEW

Whether the trial court violated MCR 2.116(G)(1)(a)(i) is a question of law which we review de novo. *Ligons*, 490 Mich at 70. A trial court's decision to exercise its inherent authority to manage its own affairs "may be disturbed only upon a finding that there has been a clear abuse of discretion." *Baynesan*, 316 Mich App at 651.

### 2. ANALYSIS

While plaintiffs' first motion for preliminary injunctive relief was pending, defendants moved for summary disposition under MCR 2.116(C)(7), arguing plaintiffs' claims were subject to binding arbitration. After the trial court denied plaintiffs' first motion for preliminary injunctive relief, it entered a January 26, 2022 order, requiring defendants to file a motion to compel and

---

the same industry and region." However, the hearing transcript supports that plaintiffs abandoned their arguments concerning the alleged misappropriation of trade secrets and confidential information.

[3] It was within the trial court's discretion to prohibit plaintiffs from filing a reply brief. MCR 2.119(A)(2)(b). While plaintiffs argue the trial court was unable to "adequately assess all of the elements necessary to grant injunctive relief" as a result of this decision, plaintiffs were provided the opportunity to adjourn the hearing.

setting out an abbreviated briefing schedule. Part of the reason for treating the arbitration issue this way was because of the court's dispositive motion schedule.

While plaintiffs are correct in that they were only given five days to respond to the motion to compel arbitration, the trial court acted within its discretion. First, the issue had already been raised, so plaintiffs were aware of it. Second, the court was attempting to balance the urgency of the matter with the other cases pending before the court, and had the authority to set a different time period. MCR 2.116(G)(1)(a). Particularly here, where the Uniform Arbitration Act intended for trial courts to determine arbitrability in an expeditious manner, see MCL 691.1687(1)(b), MCR 3.602(B)(2), and *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 591; 637 NW2d 526 (2001), the trial court did not abuse its discretion.[4]

### B. JUDICIAL ESTOPPEL

Plaintiffs also argue that compelling the parties to submit to binding arbitration was in error because defendants were judicially estopped from enforcing the arbitration agreement.

### 1. STANDARD OF REVIEW

"Judicial estoppel is an equitable doctrine," and this Court reviews "equitable actions" de novo. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012).

### 2. ANALYSIS

"Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn*, 296 Mich App at 479 (quotation marks and citations omitted). The doctrine is invoked "to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id*. at 479-480 (quotation marks and citations omitted). But, "[t]he doctrine of judicial estoppel is to be applied with caution." *Opland v Kiesgan*, 234 Mich App 352, 363-364; 594 NW2d 505 (1999) (quotation marks and citation omitted). Judicial estoppel "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims. . . ." *Id*. at 354 (quotation marks and citations omitted).

While VillageMD did argue in response to plaintiffs' first motion for preliminary injunctive relief that it was "not a party to any contract with Plaintiffs," VillageMD argued it was still entitled to enforce the arbitration clause even though it was a nonsignatory. Envision Medical Group and EMG Partners, on the other hand, argued plaintiffs could not establish they breached the operating agreement because VCOA Management was "the only Member of Vascular

---

[4] Moreover, any error would have been harmless. See MCR 2.613(A). As noted, the issue had already been properly raised, and whether plaintiffs' claims were subject to binding arbitration was a matter of contract interpretation. See *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). Plaintiffs do not explain or rationalize what additional arguments they would have presented if they had been provided additional time to respond to the motion to compel binding arbitration.

[Management Services of] Novi and VCOA [Management] [was] the only entity with the power to effectuate any of the actions in Section 5.1.2. of the operating agreement." However, Envision Medical Group and EMG Partners never asserted the arbitration clause did not apply to plaintiffs' claims against them. Instead, defendants sought to enforce the arbitration clause against plaintiffs. And although VillageMD and Envision Medical Group did not argue they were parties to the operating agreement, they did argue the language of the arbitration clause was broad enough to encompass plaintiffs' claims against them.

Defendants did not rely on a contradictory argument to prevail on their motion to compel arbitration. See *Spohn*, 296 Mich App at 480. There is no indication defendants sought to deliberately manipulate the court through gamesmanship, and defendants never argued the arbitration clause did not apply to them. Indeed, EMG Partners acknowledged it was a party to the operating agreement for a period of time. VillageMD and Envision Medical Group made it clear they were not parties to the operating agreement, but argued the clause was broad enough to encompass all of plaintiffs' claims. Given these facts, the trial court did not err by failing to apply judicial estoppel.

## C. TRIAL COURT'S DECISION TO COMPEL ARBITRATION

Plaintiffs' final substantive argument is that the trial court erred by compelling arbitration because a binding agreement to arbitrate did not exist between all the parties.

## 1. STANDARDS OF REVIEW

"Arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (quotation marks and citation omitted). The interpretation of contract language is reviewed de novo. *VHS Huron Valley Sinai Hosp v Sentinel Ins Co (On Remand)*, 322 Mich App 707, 715; 916 NW2d 218 (2018). "Whether an issue is subject to arbitration is also reviewed de novo." *Beck v Park West Galleries, Inc*, 499 Mich 40, 45; 878 NW2d 804 (2016).

## 2. ANALYSIS

The Uniform Arbitration Act outlines different responsibilities of the trial court and the arbitrator in an arbitration action. Specifically, MCL 691.1686 states, in relevant part:

> (1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract.

> (2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

> (3) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.

Thus, "[t]he existence of an arbitration agreement" is a "judicial question[ ] for the court, not the arbitrators." *Ferndale v Florence Cement Co*, 269 Mich App 452, 458; 712 NW2d 522 (2006). While "[t]he general policy of this State is favorable to arbitration," *Detroit v AW Kutsche & Co*, 309 Mich 700, 703; 16 NW2d 128 (1944), "a valid agreement must exist for arbitration to be binding," *Ferndale*, 269 Mich App at 460.

Of the two contracts, only the operating agreement, which was entered into by plaintiffs and EMG Partners, contains an arbitration clause. Contracts are interpreted "in accordance with their ordinary meaning[.]" *VHS Huron Valley Sinai Hosp, Inc*, 322 Mich App at 715. "This Court's main goal in the interpretation of contracts is to honor the intent of the parties." *Id*. (quotation marks and citations omitted). "When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent." *Id*. (quotation marks and citations omitted).

> Contractual terms can only be characterized as ambiguous if equally susceptible to more than a single meaning or if in irreconcilable conflict with other provisions of the contract. . . . [T]his Court must read the contract as a whole, and the words in the contract are to be understood in context. Courts must give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory. An unambiguous contract is to be enforced as written, and the mere fact that contractual terms are [i]nartfully worded or clumsily arranged will not necessarily lead to a finding that a contract is ambiguous if it fairly admits of one interpretation. [*Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 216; 926 NW2d 865 (2018) (quotation marks and citations omitted; alteration in original).]

As an initial matter, VillageMD argues the operating agreement contemplates an arbitrator would decide whether claims are subject to arbitration. While the Uniform Arbitration Act states it is generally for the trial court to determine arbitrability, MCL 691.1686(2), there is an exception to this rule. See MCL 691.1684(1) ("[T]he parties may vary the effect of the requirements of this act to the extent permitted by law."). Thus, as under federal law, parties may agree to delegate to the arbitrator the question of arbitrability, provided it is clearly stated in the agreement. *Rent-A-Center, West, Inc v Jackson*, 561 US 63, 69 n 1; 130 S Ct 2772; 177 L Ed 2d 403 (2010). As we have said before, if such an agreement is not apparent from the face of the agreement, a reviewing court should presume that the parties intended that the court decide the "gateway question" of arbitrability. *Bienenstock & Associates, Inc v Lowry*, 314 Mich App 508, 516; 887 NW2d 237 (2016). These gateway questions include "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id*. (quotation marks and citation omitted).

VillageMD points to § 10.3 of the operating agreement, which states that if a dispute was submitted to binding arbitration, the dispute would be "exclusively resolved in accordance with the then prevailing Commercial Arbitration Rules . . . of the American Arbitration Association. . . ." The 2013 Commercial Arbitration Rules and Mediation Procedure, Rule 7(a), states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." The Rule does not provide the arbitrator with exclusive authority to decide

arbitrability, and the Rule does not prohibit a trial court from ruling on the issue. Importantly, § 10.4 of the operating agreement incorporates MCR 3.602's "provisions," and MCR 3.602(A) states courts "have all powers described in" the Uniform Arbitration Act, part of which states that a "court shall decide whether . . . a controversy is subject to an agreement to arbitrate." MCL 691.1686(2). We conclude that because EMG Partners and plaintiffs did not clearly agree to delegate exclusively to the arbitrator the question of arbitrability, the question was for the trial court to resolve.

We now must address the more difficult question: whether the claims against Envision Medical Group and VillageMD could be subject to arbitration when they were not parties to the arbitration agreement. As recounted above, "arbitration, which is a matter of contract, cannot be imposed on a party that was not legally or factually a party to the agreement wherein an arbitration provision is contained." *AFSCME Council 25 v Wayne County*, 292 Mich App 68, 80; 811 NW2d 4 (2011). See also *St Clair Prosecutor v AFSCME*, 425 Mich 204, 223; 388 NW2d 231 (1986) and *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021). Despite this general and common-sense contract rule, a non-signatory of a contract "can still be bound by an agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel." *AFSCME Council 25*, 292 Mich App at 81. Accord: *Arthur Andersen LLP v Carlisle*, 556 US 624, 631; 129 S Ct 1896; 173 L Ed2d 832 (2009) ("For example, we have recognized that arbitration agreements may be enforced by nonsignatories through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.").

Here, the unusual posture is that the nonsignatories are arguing in favor of arbitration, while the plaintiffs—who are signatories to the agreement—argue that their separate claims against Envision Medical Group and VillageMD should not be submitted to arbitration because plaintiffs did not agree to that forum with these entities. Curiously, none of the parties cite to *AFSCME Council 25*, but instead Envision Medical Group and Village MD argue, citing *Rooyakker & Sitz, PLLC v Plante Moran, PLLC*, 276 Mich App 146; 742 NW2d 409 (2007), that because the entities are closely related, and the issues arise from the same set of circumstances, the broad arbitration clause covers all these claims.

In addressing this argument, however, we must adhere to the proposition that "this general position favoring arbitration does not go so far as to override foundational principles of contractual interpretation." *Lichon*, 507 Mich at 437. See also *id.*, at 457 n 8 (VIVIANO, J., dissenting) ("Our Court of Appeals has similarly observed that whether nonsignatories can arbitrate depends on general common-law principles, such as agency law."). But here, Envision Medical Group and VillageMD are essentially arguing an estoppel argument, i.e., that equitable estoppel allows these two defendants—nonsignatories to the arbitration clause—to compel arbitration where the signatory must rely on the terms of the agreement in asserting its claims against the nonsignatory. *GE Energy Power Conversion France SAS, Corp v Outokumpu Stainless USA, LLC*, 590 US __, __; 140 S Ct 1637; 207 L Ed 2d 1 (2020).

That argument has merit, as many of the allegations posited against Envision Medical Group and VillageMD are in some part premised upon the operating agreement. That is true with respect to Counts I, II, III, IV, and VI-X of the verified complaint. Because of plaintiffs' reliance (at least in part) on the operating agreement in pursuing these counts against these two

nonsignatories, they are estopped from avoiding the arbitration provision within that same agreement. *Id*.

With respect to plaintiffs' arguments that some of their particular claims against EMG Partners are not subject to arbitration, "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit. In this endeavor, as with any other contract, the parties' intentions control." *Bienenstock & Assoc, Inc*, 314 Mich App at 515 (quotation marks and citations omitted).

> A three-part test applies for ascertaining the arbitrability of a particular issue: 1) is there an arbitration agreement in a contract between the parties; 2) is the disputed issue on its face or arguably within the contract's arbitration clause; and 3) is the dispute expressly exempted from arbitration by the terms of the contract. This Court has expressed a general disapproval of segregating disputed issues into categories of arbitrable sheep and judicially-triable goats. Any doubts about the arbitrability of an issue should be resolved in favor of arbitration. [*In re Nestorovski Estate*, 283 Mich App 177, 202-203; 769 NW2d 720 (2009) (quotation marks and citations omitted).]

"The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement." *Altobelli*, 499 Mich at 295. "[W]hen deciphering whether [a] plaintiff's claims are covered by the parties' arbitration clause, this Court is not permitted to analyze the substantive merits of [the] plaintiff's claims. Rather, if the dispute is subject to arbitration, the merits of the dispute are left to the arbitrator to decide." *Lebenbom*, 326 Mich App at 211 (quotation marks and citation omitted).

We consider Article 10 of the operating agreement as a whole. Under § 10.1 of the operating agreement, plaintiffs and EMG Partners "irrevocably agree[d] and consent[d] that venue [was] proper in the Circuit Court for the County of Oakland, State of Michigan" and was to "be the sole and proper forum for any litigation arising out of or in connection with" the operating agreement. In § 10.2, plaintiffs and EMG Partners agreed the terms of the operating agreement were enforceable "in the Circuit Court for the County of Wayne or any other court of law with proper jurisdiction . . . for the purpose of obtaining an order compelling specific performance or injunctive relief. . . ." Thus, §§ 10.1 and 10.2 contemplate the parties initiating actions "arising out of or in connection with" the operating agreement, including actions for injunctive relief or specific performance, in circuit court.

Under § 10.3, unless a member was seeking specific performance or injunctive relief, "any and all disputes, claims or controversies involving the interpretation of" the operating agreement "or any of the provisions, terms, conditions, termination or enforcement of a Member's obligations or rights" under the operating agreement were required to be submitted to the manager in written form. If the member and the manager were unable to resolve the dispute within 45 days of a meeting, the dispute was required to be submitted to binding arbitration. Thus, §§ 10.1 and 10.3 of the operating agreement provide different options to take depending on the relief sought: circuit court for equitable relief of specific performance and/or injunctive relief, arbitration for all other matters (and even equitable relief).

Section 10.4 reinforces the proposition that certain limited claims are to be filed in circuit court, while the remainder are subject to arbitration. That section provides, in part:

> The determination of the arbitrator shall be final and binding upon the parties, shall not be appealable and judgment on the award or determination rendered pursuant to this Agreement may be entered in any court pursuant to Section 10.1. . . . [T]he failure of a party to submit the Dispute to arbitration . . . shall be a complete defense to any suit, action or proceeding initiated in any federal, state or local court or before any administrative agency with respect to any Dispute which is arbitrable as set forth herein. . . . *Arbitration shall be the exclusive remedy for any Dispute under this Agreement* except to the extent the specific enforcement of the award or specific enforcement of any term or provision of this Agreement in a court having equitable jurisdiction by a decree of specific performance or an injunction or by both is deemed necessary and appropriate by a party and . . . except with respect to the non-payment of monies due and owing in accordance with the terms of this Agreement. [emphasis added.]

Here, the trial court did not distinguish between plaintiffs' claims that seek "the specific enforcement of the award or specific enforcement of any term or provision of this Agreement in a court having equitable jurisdiction by a decree of specific performance or an injunction or by both." Instead, the court just ordered all claims to arbitration, without any specificity between the type of claims or relief sought. Therefore, although we affirm the trial court's decision that plaintiffs' claims against nonsignatory defendants are subject to the arbitration clause, the next step is whether any of the claims are "expressly exempted from arbitration by the terms of the contract." *In re Nestorovski Estate*, 283 Mich App at 202. Because the parties have not extensively argued that issue, and in any event is the type of issue to be first resolved by the circuit court, we will remand that issue for the trial court to resolve in the first instance.

## V. TRIAL COURT'S FAILURE TO CONSIDER PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs argue the trial court improperly adjourned oral arguments on their second motion for preliminary injunctive relief and improperly failed to consider the motion, which was required by the language of the operating agreement, before dismissing the complaint.

### A. STANDARDS OF REVIEW

A trial court's decision to adjourn a proceeding is reviewed for an abuse of discretion. *Pugno*, 326 Mich App at 27. The interpretation of a contract is reviewed de novo. *VHS Huron Valley Sinai Hosp, Inc*, 322 Mich App at 715.

### B. ANALYSIS

Plaintiffs' argument that the trial court sua sponte adjourned the hearing on their second motion for preliminary injunctive relief is unsupported by the record, which establishes plaintiffs filed the second motion on February 2, 2022, with a notice of hearing for February 9, 2022, which was later re-noticed to February 16, 2022. As far as we can discern, the trial court never entered an order adjourning oral arguments on plaintiffs' second motion for preliminary injunctive relief.

See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009) (noting "a court speaks through its written orders and judgments"). Thus, plaintiffs' argument lacks factual support.

Next, plaintiffs argue the trial court was required by the operating agreement to decide their second motion for preliminary injunctive relief before deciding defendants' motion to compel arbitration. To the extent plaintiffs argue they were left without an avenue for equitable relief because the trial court dismissed the complaint, we conclude this argument is unsupported. While § 10.2 of the operating agreement contemplates the "Circuit Court for the County of Wayne or any other court of law with proper jurisdiction" entering orders compelling specific performance and injunctive relief, the agreement does not bar an arbitrator from ordering specific performance or awarding injunctive relief. Indeed, § 10.3 only bars the arbitrator from awarding "punitive damages or other damages not measured by the prevailing party's actual damages. . . ." Thus, even though the trial court did not decide plaintiffs' second motion for preliminary injunctive relief before deciding the motion to compel arbitration, plaintiffs were not left without an equitable remedy. Plaintiffs could have requested equitable relief from the arbitrator, including that sought in their second motion for injunctive relief.[5] The fact that plaintiffs apparently elected not to do so is not attributable to the trial court.

Affirmed but remanded for further proceedings regarding arbitrability. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle

---

[5] See Rules 37(a) and 47(a) of the 2013 Commercial Arbitration Rules and Mediation Procedure.